THE PEOPLE EX. REL. CHRISTOPHER R. MABLEY v. THE JUDGE OF THE SUPERIOR COURT OF DETROIT.

*Trial by jury—Discretion to vacate a conditional order for new trial upon action taken amounting to a breach of condition— Removal of causes—Mandamus not a writ of right—Injunction and restraining orders to prevent trials of causes.*

The right to trial by jury is waived in civil cases by neglecting to demand it; and if the judge orders one for his own satisfaction, it does not concern the parties.

Where neither party has demanded a jury, the assignment of the case for a particular day in term is a plain intimation that no jury will be called.

The Supreme Court cannot consider matters that were not brought before the court below on a motion for new trial, to show an improper disposition of the motion.

Where a new trial is not a matter of right, the judge in granting it may properly impose such a condition as that the parties must waive any supposed right of removal and try the case at the following term.

Where a new trial is granted on conditions, the judgment remains in force subject to the conditions and is not absolutely vacated until they are performed.

A plaintiff cannot be deprived of a choice of tribunals given him by law, unless by proceedings in strict accordance with the statutes.

A State court cannot refuse to retain jurisdiction of a case that is not properly removed from it.

A State court cannot resist the removal of a case to a federal court if it is legally removable thereto.

One court cannot enjoin another.

The acts of Congress contemplate the issue of *ex parte* orders from a federal court to restrain the trial in a state court of a cause that is entitled to removal, only when it appears that there is danger of irreparable injury from delay.

A United States marshal is not protected in seizing property belonging to one person under a writ directed against others.

Trover against persons seizing property under federal process can be brought in a state court, and if any question arises under the laws of the United States the Supreme Court of the United States can review any final decision of the state courts against the defendants.

There is no jurisdiction by mandamus to review the discretionary action of inferior courts.

Mandamus is not a writ of right, and is not usually allowed to those who have been culpably dilatory or otherwise at fault.

MANDAMUS. Submitted April 22. Denied June 4.

*Don M. Dickinson* and *Alfred Russell* for the writ.

*Henry C. Wisner* and *G. V. N. Lothrop* against.

CAMPBELL, C. J. A mandamus is asked to compel the Superior Court of Detroit to vacate an order setting aside a previous conditional order for a new trial. There are circumstances which make the application peculiar, and which render it proper to refer to the facts more at length

than the legal questions alone would require.  As a mere matter of law there can be only two points presented, which are *first*, whether the action of the Superior Court went beyond its discretionary power and violated an absolute right; and *second*, whether we would be justified, in the exercise of our own discretion, in granting the relief prayed, assuming we have a right to do so.

The suit in the Superior Court was an action of trover, brought by Samuel Schwab as plaintiff against relators for the conversion of goods which he claimed as his own property, but which were forcibly taken away from him by relators, or by some of them whose action was furthered by the rest.  This action was brought April 27, 1878.

On the 15th day of May, 1878, all the defendants appeared and pleaded the general issue, with notice that the property in question belonged to the firm of Schott & Feibish, and were seized by Matthews, one of the defendants, under a provisional warrant in bankruptcy against their estate, to which an assignee had since been appointed, who had received them from Matthews, who was United States Marshal.

This assignee, it now appears, was one Joseph L. Hudson.

Plaintiff Schwab, in due time, noticed the cause for hearing at the July term.  Neither party demanded a jury.  At the beginning of the term the case was regularly assigned for hearing with the knowledge of all parties, defendant's counsel subsequently claiming he did not suppose it would be tried without a jury, as will be further referred to.  No preparation was made by the defendants for defense, but they calculated on removing the cause to the United States court before it could be reached for trial, on the claim that Schwab was an alien. Whether he was or not does not appear, and is not now important.

On the 12th of July, the day of trial, counsel for defendant, knowing that the case was on call, for the first time

informed the judge that he was preparing papers for removal which he expected to complete when he should find a proposed bondsman. The judge agreed to wait half an hour, if the case should be reached, and when reached did so wait for a longer period, against the protest of plaintiff's counsel, who were ready for trial. Matthews, the marshal, one of the relators, had been called upon, and was present as a witness for plaintiff. At length the trial began, and on the subsequent appearance of defendant's counsel, he was informed it was too late to remove the cause, which proceeded to judgment.

A motion for a new trial was then made, the grounds of which, so far as the affidavits show, were an idea in the mind of defendant's counsel that the case was one which from its nature the judge would not try without a jury, and a design to remove the case, which had not been seasonably carried out by reason of other occupations of the leading counsel. The only grounds which could be regarded as creating peculiar equities arose out of a claim that one of the counsel had been actually misled concerning the probability of a jury trial.

Upon this the affidavits showed that the defendants had purposed removing the cause, and had been delayed, partly by making inquiry to find out Schwab's citizenship, and partly because one of the counsel had been doing business in other courts. The papers were not put into his hands by Matthews until July 11, the day before the trial. The affidavits presented to Judge Cochrane averred that one of defendant's counsel had been informed by the clerk on July 10 that the judge would not try the case without a jury. There was no averment that they had ever purposed preparing for trial.

As the constitution declares that a trial by jury is to be deemed waived in all civil cases unless seasonably demanded, defendants knew they had no such right. The judge is empowered for his own satisfaction to order a jury, but this is not a matter which concerns the parties themselves, who have not asked one. In this case,

no demand being made by either party, the assignment of the case for a particular day in term, which necessarily put plaintiff to the trouble and expense of procuring witnesses and making preparations, was a very plain declaration that no jury would be called. Although somewhat calculated on a hasty reading in one instance to raise the impression that the judge himself had indicated to the contrary, a careful perusal of the affidavits used on the motion for a new trial shows that no suggestion was then made that he had either said or done any thing having any tendency to create such an impression. Such a suggestion would have shown judicial misconduct, and we regret that in one of the affidavits presented to us to obtain the order to show cause, matter is contained which was not laid before Judge Cochrane on the motion for a new trial, bearing in that direction. Nothing which was omitted then can now be used, even if not denied, to show an improper disposal of that application; and the death of the judge, which occurred before this application was made to us, although a long time after his action which is complained of, prevents his response, which we are bound to believe would have been complete, to any such insinuation. He made a conditional order, allowing a new trial on conditions, which were the payment of a small sum of costs, the disclosure of the nature of the defense, the waiver of any removal of the cause, and the trial of it at the next term.

Before the case was reached at the next term, it being assigned for Tuesday, October 8th, the defendants, joining with the assignee in bankruptcy, filed a bill in the United States Circuit Court for the eastern district of Michigan on Saturday, October 5th, in which the transfer to Schwab of the property in question was attacked, and they obtained an *ex parte* restraining order with the effect of an injunction against Schwab and his counsel from proceeding with that suit or any other in the State courts. They served this on the day before the trial was appointed

and filed a notice of this proceeding in the Superior Court itself. Judge Cochrane being informed of this, and the case not being tried for that reason, after giving defendants an opportunity of being heard, revoked his conditional order as having been departed from by the injunction bill and the steps taken under it, and restored the suspended judgment. This action was taken October 12th, 1878, and this we are now by an application made in April, 1879, called upon to set aside by mandamus.

We do not see any ground for claiming that the application for a new trial was a matter of right. The case had been regularly noticed for trial, and the defendants neglected their defense. It was within the knowledge of the judge how far they had been authorized to presume on delay, and how far they were excusable. If he had entirely refused relief, we do not discover why it would not have been a legal refusal. He granted it, but only upon conditions.

The principal and most important one was that the parties should waive any supposed right of removal and try the cause in the Superior Court at the next term. This was not only legal, but we think it was under the circumstances entirely proper. The marshal was not sued for any act done under process against Schwab. He was sued for taking one man's property under a writ against other persons. If he actually did so, his writ could not protect him, and he could not be regarded as acting in right of his office. Any defense could be fairly made in the Superior Court, and any question arising under the laws of the United States, if the case presented any such questions, could be reviewed by the Supreme Court of the United States if ultimately decided against the defendants by a State court. The plaintiff had a right to sue in the Superior Court, and had a right to have the cause tried there unless lawfully removed. If removable, no State court could properly prevent it or

oppose it within the terms of the act of Congress. *Yawkey v. Richardson*, 9 Mich., 529. But on the other hand no court has any right to prevent suitors before it from insisting on its retention of jurisdiction in cases not properly removed from it. *Granger v. Wayne Circuit Judge*, 27 Mich., 406; *Murphy v. Granger*, 32 Mich., 358. It is always to be presumed that any court which has jurisdiction of a case will exercise it justly. But where the law gives a plaintiff a choice of tribunals, no one can justly deprive him of it, except in strict accordance with the statutes.

The motion before Judge Cochrane was to set aside the judgment and grant a new trial. He would not have been justified in opening the judgment regularly obtained for any other purpose. And it was certainly within a proper exercise of discretion to refuse to open it except for a new trial in his own court on such terms and conditions as he deemed equitable.

Under the order he made we think the judgment still remained in force subject to the conditions imposed, and that it could only be absolutely vacated when those conditions were performed. Nothing but some act which would irrevocably preclude a removal would fulfill the condition against removal. And the whole condition taken together could not be discharged until a new trial was fairly opened at the next term of the Superior Court. Any step to prevent that was a relinquishment of the right to have the judgment opened.

When the defendants filed their bill to prevent any further action in the Superior Court they very clearly repudiated any further action under the order of July which gave them the means of having a new trial there. The Superior Court could not very well have done otherwise than revoke the order which had been practically revoked by the defendants themselves by their renunciation of its chief conditions. Inasmuch as no court can lawfully enjoin another court, and no attempt was made by the United States court to do any such thing, the act

of filing the injunction in the Superior Court was an improper and offensive act, which ought not to pass without censure.

We are not called upon to discuss the injunction suit on this record, and shall abstain from doing so, inasmuch as it could have no operation on the suit in the Superior Court, or in any way suspend its official powers or duties. We do not understand that any one claims that the United States Circuit Court can exercise revisory powers over a State judgment in this way, or that it asserts any such power.

As we have no jurisdiction by mandamus to review the discretionary action of courts in such cases as that before us, we cannot grant the writ. But we think, in view of all the facts, that we should not confine the refusal to the mere lack of power. The writ of mandamus is not a writ of right, and is not usually allowed to parties who have been culpably dilatory, or otherwise at fault, as we think they have been here.

The defendants postponed their proceedings to remove the cause until the day before it was to have been tried the first time, and the delay defeated the removal. They waited until the day before the second trial was to have been had, and then served the preliminary injunction order obtained *ex parte* on the preceding Saturday, and noticed the motion for an injunction for a day in the week succeeding that in which the time for trial had been assigned. The bill, which contained not only the prayer for an injunction, but a prayer for a restraining order until a motion for injunction could be heard, was sworn to on on the 16th day of September, 1878, more than three weeks before the day on which the cause was set down for trial. As the acts of Congress only contemplate such preliminary *ex parte* orders when it appears there is danger of irreparable injury from delay (Rev. Stat. of U. S., § 718), this course, which for a second time subjected the plaintiff and his counsel to fruitless expense and trouble in preparation for trial, without any sugges-

tion that a movement would be made to avoid it, appears on its face to have been vexatious, and has not been explained. Judge Cochrane's last order was made on the 12th of October, 1878. This court was in session until the latter part of November of that year, and several motion days intervened before adjournment. The January term of 1879 began and ended, and no application was then made for relief. The term of the Superior Court at which the order was made and two complete terms thereafter elapsed, and a third term was nearly closed before an application was made to this court for an order to show cause why a mandamus should not issue. In the meantime, and after the close of our January term, Judge Cochrane died. An application for an order to show cause was made to this court on the. 15th of April, 1879, and heard on the 22d.

It is manifest there has never been any *bona fide* disposition to have the case tried by jury, or tried at all in the Superior Court. The attempt to transfer the litigation into a court of equity where there is no jury shows this, and it is not seriously claimed that any such desire exists. The defendants have not resorted to the Superior Court or to this court with such a purpose as any court can properly favor. It is the business of all tribunals to enforce the rights of those who have legal claims upon their action, and not to deprive them of a position they have once regularly secured to let them be cut off from the means of enforcing their claims in a forum they had a right to invoke. Delays are always to be deprecated, and delays which are apparently vexatious and unreasonable, are in themselves a reason for withholding such relief as is discretionary, unless there are very strong considerations to the contrary. However much parties and their counsel may persuade themselves of the wisdom of their course in the heat of controversy, courts cannot overlook such a course of action.

There are several portions of the record before us

which, in the view we take of the discretionary character of Judge Cochrane's action, we do not think it important to consider. The legality of his proceedings could not be increased or diminished by the subsequent course of the parties, although it might, perhaps, have had some bearing on the exercise of our own discretion if we could pass upon the matter further. We cannot decide which of these parties is most censurable on the merits of the controversy, and we are not disposed to express views on the other questions which the state of the record does not require us to express.

The mandamus must be denied with costs.

The other Justices concurred.