Ex rel. Joseph L. Hudson v. Judge of Superior Court of Detroit.

*Writ of prohibition—Bankrupt's assignee not affected by judgment against the marshal—res judicata.*

An assignee in bankruptcy who has sold goods supposed to belong to the bankrupt, and received the money therefor, is not damnified or delayed in the execution of his duty by a judgment in trover against the United States marshal for seizing them.

Parties to a controversy cannot, after judgment, receive it in another court and cause, in order to raise again the questions already in issue and adjudicated.

A writ of prohibition is a common-law preventive against the encroachment, excess or improper assumption of jurisdiction, and can only be restored to in clear cases and where other remedies are ineffectual. It may lie at the suit of one or more parties on either side to restrain the action of the court so far as it exceeds its jurisdiction and thereby affects the petitioner; but it is a discretionary writ and will not be granted unless it appears that the petitioner has vainly applied for relief to the court against which he wishes it to issue.

An assignee in bankruptcy may be entitled to a writ of prohibition to restrain a State court from enjoining his proceedings in the Bankrupt Court to quiet his title to goods turned over to him by the marshal as assets of the bankrupt's estate.

WRIT OF PROHIBITION. Motion submitted October 28. Denied November 29.

*Griffin & Dickinson* and *Alfred Russell* for the writ.

*Wisner & Speed* and *G. V. N. Lothrop* against.

MARSTON, J. March 14, 1878, Cauffman & Dinkelspeil et al., residents of the city of Rochester in the State of New York, filed a petition in the District Court of the United States for the Eastern District of Michigan, praying therein that Schott & Feibish of Detroit might be adjudged bankrupts. They also filed a petition showing that Schott & Feibish had disposed of their property in fraud of the Bankrupt Act, and obtained thereon from

said court a provisional warrant directed to, and which was placed in the hands of Salmon S. Matthews, the marshal of said district.

The marshal found in the city of Detroit certain goods in boxes marked "S. Schwab, Helena, Montana" which, believing to be a part of the assets of Schott & Feibish, he seized under the provisional warrant.

April 27, 1878, Schwab commenced an action of trover in the Superior court of Detroit against Salmon S. Matthews, Christopher R. Mabley, Henry Michaels, Bernard Rothschild and Ferdinand Hays, to recover the value of the goods so seized by the marshal. The defendants appeared in said action by their attorneys and put in a plea, and a judgment was on July 12th, 1878, rendered in favor of the plaintiff, which was in effect affirmed in this court. *Mabley v. Judge of Superior Court*, 41 Mich., 31.

In September, 1878, and during the pendency of certain proceedings in said Superior Court in reference to said judgment, the defendants therein, joining with Joseph L. Hudson, filed a bill of complaint in the Circuit Court of the United States for the Eastern District of Michigan, in equity, against Samuel Schwab. A supplemental bill was afterwards filed. As the writ here asked for is to prohibit any interference with the prosecution of this equity case, a clear understanding is necessary, of the facts therein set forth, and of the object and purport of the bill.

The facts preceding, and which led to the commencement of the bankruptcy proceedings already referred to, are set forth quite fully, but are of no special importance in the determination of the questions here raised.

It is alleged that certain goods had been placed by Schott & Feibish in the possession of Joshua W. Smith and others, in violation of the provisions of the Bankrupt Act, and that the transfer thereof was made to prevent the property from coming into the hands of an assignee in bankruptcy, and that no sale thereof was made in

fact or intended: "therefore said creditors insisted that the said goods and chattels were a part and parcel of the assets of said Schott & Feibish, and that the said goods were liable to seizure by said marshal under said provisional warrant, and demanded that the marshal should seize and hold the same, and they gave to said marshal the bond of indemnity provided by General Order 12;" that the marshal, so believing, took possession of certain of said goods, and he also ascertained that a pretended purchase of the Joshua W. Smith goods had been made by Schwab; that said marshal learned where the goods were secretly stored in boxes marked "S. Schwab, Helena, Montana;" and that by virtue of said provisional warrant he seized and took possession thereof as part of the assets of said bankrupts, and that, as said marshal believed and had reason to believe, immediate seizure was necessary to prevent the goods being placed beyond the reach of the said creditors; that proceedings were afterwards had upon said creditors' petition, and on April 13th, 1878, Schott & Feibish were duly adjudged bankrupts, and on May 6th complainant Hudson was elected assignee; that he filed his bond and became duly qualified to act as such, and upon the same day an assignment of the estate and effects of said bankrupts was duly made and delivered to him by which he became entitled to the effects of said bankrupts, and the same became vested in him as such assignee; and that on May 6th the marshal turned all of said goods over to said Hudson, assignee.

It is also alleged that for the goods seized from other parties suits were commenced in the State courts against said marshal by the parties claiming to own the same, and from whose possession they were taken; that Schwab, April 27th, 1878, commenced an action in the Superior Court, as already stated; that said suit is at issue and upon the docket for trial at the then term of said Superior Court, and had been assigned for trial for October 8, 1878; that on May 6, 1878, Schwab had commenced

a suit in the Wayne Circuit by capias against said Matthews, Rothschild, Hays and Michaels, which was for the identical cause of action as that commenced in the Superior Court; that the goods so seized upon said provisional warrant were sold by said Hudson, assignee, under an order of said Bankruptcy court, made upon application, stating all the facts in relation thereto as to the claim made by said Schwab *et al.*, and that the proceeds of said sale are held by said assignee, to be applied as a part of the estate of said bankrupts, if the title shall be found in him as assignee, and that said funds are awaiting the determination of said question; that complainant Hays and Michaels had nothing to do with the seizure, except as creditors of said bankrupts in directing the seizure; that said Mabley had nothing to do with the seizure except to act as an appraiser of some of them after they were seized, and that Mabley is not a creditor of Schott & Feibish.

Facts are then set forth tending to show that these goods remained the property of said bankrupts, and that the pretended sales to Schwab and others were fraudulent, etc.; and complainants aver that the goods named in the declaration in the said case commenced by Schwab in the Superior Court, are goods which were transferred through said Smith & Freund by the said Schott & Feibish when insolvent, and with the intent on their part to prevent them from coming into the hands of an assignee in bankruptcy, and to defeat the provisions of the Bankrupt Act; and that the sale was made within three months before the filing of the creditors' petition, and that Schwab knew Schott & Feibish were insolvent, and were acting in contemplation of insolvency and bankruptcy proceedings, and to defeat the object of the Bankruptcy act; therefore complainants aver and charge that the sale was void and that the title of the goods became vested in the assignee.

It is then alleged that said Hudson, assignee, claims that by reason of such suits he is unable to proceed

with the settlement of the estate of said bankrupts; that the funds so received from the sale of the disputed goods must be kept by him until the question in reference to the title thereof shall be determined; that the suits so commenced against the marshal and others are intended to impede and delay the settlement of said estate; and "the question in regard to the fraud so attempted by said bankrupts, and by the said plaintiff in said suit, to wit, Samuel Schwab, cannot be determined without the aid of this court, and that said question cannot be litigated, tried or determined in the State court."

Complainant Hudson states and claims that said Schwab's suit in the Superior Court against said Matthews, as marshal, "is an obstruction to his duties in the settlement of said estate; that the same ought not to be allowed to be prosecuted in the State courts, where the complicated matters in relation to the alleged fraud in regard to the transfers of said goods cannot be fully determined, and that the suit so pending in the State courts in relation to the estate of said bankrupts are a direct obstacle to the speedy settlement and adjustment of the estate, and that the parties therein should be enjoined from the prosecution of said suits; and if said Samuel Schwab has any title or claim to said goods, he should litigate the same in the court of bankruptcy, where matters relating to said estate are pending. And said complainants also claim that the title of said goods so claimed by said Samuel Schwab involves the determination of the title of said Joseph L. Hudson, assignee of said Schott & Feibish in bankruptcy, under the Bankrupt Act. The State courts have no jurisdiction to try that question, and this court should determine the same."

Complainants pray that Schwab and his attorneys be enjoined from any farther prosecution of said suit in said Superior Court, or in any other court of the State, in regard to the goods so seized by said Matthews as marshal, and for any damages therefor, and that if Schwab claims any title, lien, or interest therein, he proceed to

establish the same in said United States Court, or in the District Court wherein said bankruptcy matters are pending; and that the sale, transfer or assignment by Schott & Feibish or others to Schwab be set aside and held for naught and decreed to be in violation of the Bankrupt Act, and that they be decreed to be a part of the assets of said bankrupts, and that said assignee's title thereto may be quieted and perfected.

In February, 1879, a supplemental bill was filed by said complainants in said United States court reciting the substance of the original bill and service of a restraining order upon the attorneys of Schwab, and that no appearance or service upon Schwab had been put in or made, and that a copy of the restraining order had been filed in said cause in said Superior Court, and the action of said Superior Court in setting aside an order granting a new trial and reinstating the judgment in said cause, wherein Schwab was plaintiff and Matthews *et al.* were defendants, and the facts and proceedings in relation thereto; that an execution had been issued upon said judgment from said Superior Court and placed in the hands of the sheriff of Wayne county, and a levy made thereunder upon the property of defendant Mabley, and a sale thereon about to take place. Complainants pray for an injunction to restrain said Schwab from collecting or in any manner attempting to collect said Superior Court judgment, and to restrain the sheriff and attorneys in the case from attempting or directing the enforcement of said judgment, and that the collection of said judgment be perpetually enjoined and be declared null and void, and that the goods for which the judgment was rendered be decreed to have been at the time of the seizure by the marshal, a part of the estate of the bankrupts.

July, 1879, Schwab filed his bill of complaint in the Superior Court in equity, setting forth the commencement of suit by him in said court against Matthews *et al.*, already referred to, and the various steps and proceedings

therein in detail; the commencement of said suit in equity in the United States Court and the proceedings thereunder; that under the proceedings in said cause defendants in this case, complainants in the case in the United States court, are obstructing the complainant Schwab in collecting his judgment; that unless permitted to collect said judgment complainant is without remedy, and he prays relief by injunction against defendants from interfering with complainant, his attorneys, or the said sheriff in the collection of said judgment; also from prosecuting or maintaining any suit at law or equity in any court, save the Superior Court or a court appellate thereto, involving the controversies referred to; from presenting or applying to any court or judge for process against his agents, attorneys or the sheriff to prevent the collection of said judgment. The usual order was made allowing an injunction to issue as prayed for.

A motion was made by defendants Mabley and Matthews for a dissolution of this injunction, and denied. Hudson appeared in said chancery cause in said Superior Court, but has asked no relief by motion or otherwise. He now comes into this court and by petition asks that a writ of prohibition may issue to said Superior Court to prohibit it from any farther proceedings in said chancery case, and from exercising jurisdiction over the subject matter thereof or parties thereto, and for such farther relief as justice may require.

Upon this petition an order was granted requiring the Judge of the Superior Court to show cause why a writ should not issue to prohibit any interference with said Hudson's prosecuting his said equity suit in the United States Court to determine his title to said goods, and the question now arises upon return made to that order.

From a careful examination and consideration of all the facts set forth in the original and supplemental bills filed in the United States Court, it is apparent that the principal aim and object sought, if not indeed the only one, was, in the first instance, to prevent the prosecution

of the case of *Schwab v. Matthews et al.*, pending in the Superior Court, and since judgment was rendered therein, the collection thereof. The question of quieting and determining the title of Hudson, as assignee, to the goods seized, or the avails thereof, is but secondary, and even to that extent of doubtful good faith. If the latter were the real object, there would be no necessity, or even propriety, in joining as parties complainants the defendants in the Superior Court case, some of whom were not even creditors of the bankrupts, or interested in the proceedings taken against them.

Be this as it may, however, and without adverting at length to the propriety or legality of seeking to set aside and having declared null and void in this way a valid judgment of the Superior Court, we cannot, from the showing made, see how the assignee in bankruptcy can be at all delayed or obstructed in the performance of his duties by the judgment rendered in the Superior Court, or the efforts of the plaintiff therein to collect the same from the defendants in that case. The assignee is not a party defendant in that case, and is neither personally nor as assignee bound by the judgment. The payment of that judgment by the defendants therein, or its enforced collection against them, cannot take away or affect injuriously the assets of the bankrupts in the hands of the assignee. There is no pretense made, in either the original or supplemental bill, that any person other than Schwab, as against the bankrupts or their assignee, claims the goods in dispute, or any part thereof or interest therein, and payment or satisfaction of the Superior Court judgment effectually settles all farther claim by Schwab to the goods or avails thereof, thus leaving the proceeds thereof unquestioned in the hands of the assignee to be distributed amongst the creditors of the bankrupts. How, therefore, the assignee or those he represents can be injuriously affected by the collection of that judgment, is not apparent. True, those who indemnified the marshal, and those against whom the

judgment was rendered, may be affected, but we do not understand it to be the duty of the assignee to protect them. Certainly the bills filed do not proceed upon the theory of affording protection to those creditors who indemnified the marshal. The indemnifying creditors are not made parties in the equity cases, nor is relief asked in their behalf as such. The marshal and those who were joined with him as defendants in the case in the Superior Court had an opportunity to be there heard. If they submitted themselves to the jurisdiction of that court, and permitted a judgment to be rendered against them, we do not consider or understand it to be one of the duties of the assignee in bankruptcy to relieve them from the consequences thereof. Should the assignee proceed, and the court determine and decree that the title to the goods claimed by Schwab was in the assignee, and that they were a part of the assets of the bankrupts, how would the judgment rendered in the Superior Court in such a case affect the assignee? Would he thereupon have the right to apply for relief to prevent its collection against the defendants therein, and upon what grounds? The decree would be a direction and protection to the assignee in the distribution of the proceeds of the goods, but would still leave the judgment of the Superior Court valid and binding as against the parties defendants therein.

We do not consider worthy of any very extended examination the right of the defendants in the Superior Court case to proceed in this way, either as sole complainants or joined with the assignee, to have set aside and declared void the judgment of a court of record, rendered against them in a cause of which the subject-matter was clearly within the jurisdiction of the court, and they were properly brought in, appeared and given an opportunity to defend. The complainants, who were defendants in that case, have not sought either the proper forum or remedy for that purpose, nor have they made any case entitling them to any such relief. The judgment rendered against them must be held conclusive,

and they cannot be allowed to revive the controversy in another court and cause for the purpose of raising the same questions then in issue and passed upon. Cooley's Const. Lim., 46, 47. Certainly this court should not lend its assistance, in the exercise of a discretionary power, to the aid of those defendants to proceed in another tribunal, to have declared null and void a judgment which this court has already declared valid, and affirmed. Nor should we aid in this way a stranger to that case to prevent its collection, where his rights cannot be prejudicially affected thereby.

The writ of prohibition is a remedy provided by the common law to prevent the encroachment of jurisdiction. It is a proper remedy in cases where the court exceeds the bounds of its jurisdiction, or takes cognizance of matters not arising within its jurisdiction. It can only be interposed in a clear case of excess of jurisdiction, and may lie to a part and not to the whole. It simply goes to the excess of jurisdiction, and the application for the writ may be made by either the plaintiff or the defendant in the case, or if more than one, by either where the excess of jurisdiction affects him. It can only be resorted to where other remedies are ineffectual to meet the exigencies of the case. It is a preventive rather than a remedial process, and cannot, therefore, take the place of a writ of error or other mode of review. It must also appear that the person applying for the writ has made application in vain for relief to the court against which the writ is asked. The writ is not granted as a matter of strict right, but rests in a sound judicial discretion, to be granted or not according to the peculiar circumstances of each particular case when presented. 8 Bac. Ab., tit. "Prohibition;" 3 Bl. Com., 111; *Appo v. People*, 20 N. Y., 531; *People v. Seward*, 7 Wend., 518; *Arnold v. Shields*, 5 Dana, 21; *Washburn v. Phillips*, 2 Met., 299; *Ex parte Hamilton*, 51 Ala., 62; *Blackburn Ex parte*, 5 Pike, 22; High Ext. Rem., §§ 773, 765.

In the bill of complaint filed in the Superior Court, Schwab, the complainant therein, prays that the defendants be restrained and enjoined "B—From prosecuting or maintaining any suit at law or equity in any court save the Superior Court of Detroit, or a court appellate thereto, involving the controversy aforesaid." In so far as this asks and the injunction issued thereon enjoins the relator from proceeding in the United States court to quiet or determine the title to the goods turned over to him by the marshal, if it does, we are of opinion the relator would be entitled to relief were it not that he has made no application whatever to the court below or the judge thereof for relief. A motion was made by some of the other defendants for a dissolution of the injunction, a relief which they clearly were not entitled to. Had the relator made a proper application for relief to the extent mentioned, we must assume it would have been granted. In so far as relator or his co-complainants through him, seek to have the judgment of the Superior court set aside or declared null and void, or seek to interfere with the due and proper collection thereof by the plaintiff and his attorneys, and ask this court to assist them therein by issuing a writ of prohibition as prayed for, we must decline. No application having been made by relator to the Superior Court for relief, the writ must be denied with costs against relator.

The other Justices concurred.