# Sullivan *v.* Spotswood.

82  163<br>105  399

*Bill in Equity for Injunction against Interference with Boom.*

1. *Navigability of tidal waters.*—All tidal waters are presumptively public and navigable, their navigable character depending rather on their capacity for the useful purposes of trade and travel, than on their actual use, past or present ; and it is not governed by the tests applicable to running streams above tide-water, which are presumptively private and non-navigable.

2. *Same; Hog Bayou, above Mobile.*—On the evidence adduced in this case, Hog Bayou, between four and five miles above Mobile, with which it has navigable communication through Mobile river and Chickasabogue creek, of which latter navigable stream it is a recess or inlet, is held to be a public and navigable water, being of capacity in width, depth, and freedom from obstruction, for valuable floatage, and for navigation by barges, rafts and steam-tugs, drawing not more than four feet of water; although it is only about four miles in length, has not much valuable timber along its banks, and has hitherto been used but by few persons.

3. *Lease of "water front and booming facilities" of navigable water.*—A lease of the " water front and booming facilities, from its forks to its mouth," of a navigable water, made by a riparian proprietor, does not

convey the soil or bed under the water, but passes only the right to con-
struct and maintain booms along the bank, subject to the public right
of user as a navigable water.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 1st December, 1885,
by Martin H. Sullivan, against Thomas E. Spotswood ; and
sought to enjoin the defendant from interfering with a boom
which the complainant had erected on and across Hog
Bayou, a few miles above Mobile. The complainant was
the owner of an undivided half interest in lands on the
west side of the bayou, and had purchased the unexpired
term of a lease of other property, which was thus described :
" The water front and booming facilities of Hog Bayou,
from its forks to its mouth, and the water front and boom-
ing facilities on the west bank of Chickasabogue Creek,
from Shell Bayou, to and including the mouth of Hog
Bayou ; also, a tract of land fronting on Chickasabogue
River and Hog Bayou, and following the meanderings of
said stream between two points—viz., one on the west bank
of Chickasabogue, four hundred feet south of the mouth of
Hog Bayou ; the other on the southerly bank of Hog Bayou,
opposite to its forks—said tract extending back one hundred
feet throughout its length, and conforming to the meander-
ings of said stream." This lease was for the term of fifteen
years, commencing on the 26th June, 1882 ; was granted by
J. M. & T. Meaher to the defendant, Thomas E. Spotswood,
by whom it was transferred and assigned to W. C. Spots-
wood, and by the latter to the complainant, on the 7th July,
1884. The complainant, claiming that the bayou was a
private and non-navigable water, had constructed a boom
on it, which was secured at the lower end by timbers stretched
across it, fastened with a lock and chain, to prevent his logs
from floating away. The defendant had leased lands above,
with the water front and booming facilities, and had there
constructed another boom ; and claiming that the bayou
was navigable and public, and that the complainant's boom
obstructed its navigation, he broke the lock and chain, pass-
ing through up to his own boom. On final hearing, on
pleadings and proof, the chancellor dismissed the bill ; and
his decree is now assigned as error.

OVERALL & BESTOR, for the appellant, cited *Ellis v. Carey*,
30 Ala. 725 ; *Rhodes v. Otis*, 33 Ala. 578 ; *Peters v. Railroad
Co.*, 56 Ala. 528 ; *Walker v. Allen*, 72 Ala. 456 ; *Lewis v. Cof-
fee County*, 77 Ala. 190 ; Bigelow on Estoppel, 283.

PILLANS, TORREY & HANAW, *contra*, cited *Walker v. Allen,* 72 Ala. 452; *Brown v. Chadbourne,* 31 Maine, 21; *Martin v. Bliss,* 5 Blackf. 35; *Attorney General v. Woods,* 108 Mass. 436; 46 Wisc. 237; 18 Barb. 277; 42 Penn. St. 219; *Escanaba Co. v. Chicago,* 107 U. S. 678; Gould on Waters, §§ 43, 53, 107.

CLOPTON, J.—The appellant, who files the bill, seeks to enjoin appellee from interfering with a boom, which he had erected across the mouth of Hog Bayou, whereby its passage is obstructed. Whether or not the bayou is public and navigable water, involves the determination of the right of complainant to the injunction, and is the main contention of the parties.

The appellant insists, that its navigableness should be determined by the tests deduced and stated in *Rhodes v. Otis,* 33 Ala. 578, and approvingly quoted in subsequent cases, in which this court considered what constitutes a navigable stream. The points, as to which it is declared in those cases inquiry should be made, relate to the fitness of the stream, and the period of its capacity for valuable floatage; the number of individuals interested, and the public interests involved, in its use of transportation; the length of time previously used; the character of the government surveys, whether following the meanderings of the stream, or including it in the surveys; and the prospective public use. Such practical tests become necessary and appropriate, when the stream is suitable for transportation only during certain periods of varying duration, recurring from year to year, and for limited purposes; where the navigability may be said to be relative, being dependent on the sufficiency and periodicity of the stages of water, produced by natural causes, and the time of their usual continuance. The stream in question, in the case above cited, was of this nature; and the points of inquiry were deduced from a review of the authorities in the ascertainment of the principles on which the *fact* of the navigability of *fresh-water* streams should be decided. They were not intended to apply, and are inapplicable to tidal waters, or to rivers above tide-water, which are in fact navigable the entire year, without reference to the manner or degree in which they are affected by the seasons. If a stream above tide-water has not been treated as navigable, and the bed reserved from grant or sale, in the survey of the public lands, it is *prima facie* private, and such survey casts the burden of proof on the party asserting that it had the character of being private and navigable. In such case, previous use, the distance

and length of the time for and during which it is capable of navigation, the commodities useful to trade or commerce to be accommodated, and a sufficient number of individuals interested to impart the character of a public use, become valuable and important, if not conclusive tests.

In *Walker v. Allen*, 72 Ala. 456, it is said : "The test is the adaptability of the waters to the purposes of navigation, whether they are, or in fact have been used by the public, or are capable of being used, in their natural condition, as highways for commerce ; for trade and travel ; for the transportation of the products of the country, of its industries, of its fields, forests, or mines, in the customary modes of such transportation." Extraordinary high tides, if tidal waters, or sudden freshets of brief continuance, if fresh—a mere possibility of being used under unusual and occasional circumstances—will not suffice to constitute a navigable stream. In *State v. B·ll*, 5 Por. 365, GOLDTHWAITE, J., says : "To make a navigable stream, three circumstances must concur : 1st, the stream must have sufficient width ; 2d, sufficient depth ; and 3d, a freedom from insurmountable obstructions." It is true that the flow and ebb of the tide is not regarded, in this country, as the usual, or any real test of navigability ; and it only operates to impress, *prima facie*, the character of being public and navigable, and to place the *onus* of proof on the party affirming the contrary. But the navigability of tidal waters does not materially depend upon past or present actual public use. Such use may establish navigability, but it is not essential to give the character. Otherwise, streams in new and unsettled sections of the country, or where the increase, growth, and development have not been sufficient to call them into public use, would be excluded, though navigable in fact—thus making the character of being a navigable stream dependent on the occurrence of the necessity of public use. Capability of being used for useful purposes of navigation, of trade and travel, in the usual and ordinary modes, and not the extent and manner of the use, is the measure of navigability, in the sense in which the term "navigable waters" is employed in the act of ·Congress for the admission of Alabama into the Union, and in the constitution and statutes of this State ; waters, which at that time were navigable in fact, though in unsettled or sparsely inhabited portions of the State. The distinguishing test is, whether the stream is "susceptible or not of use as a common passage for the public." Waters navigable in fact, it has been said, are regarded as public navigable waters in law; and a stream is navigable in fact, when it is capable in

[Sullivan v. Spotswood.]

its natural state, and ordinary volume of water, of trans-
porting in a marketable condition the products of the con-
tiguous country, whether of its forests, mines, or the tillage
of the soil.— *The Daniel Ball,* 10 Wall 557.  If of width,
depth, and freedom from obstructions, sufficient for valua-
ble floatage ; if in its natural condition and ordinary capac-
ity, it is susceptible of public use, the public have an ease-
ment therein for the purposes of transportation.—*Ellis v.
Carey,* 30 Ala. 725 ; *Lewis v. Coffee County,* 77 Ala. 190 ;
*The Montello,* 20 Wall. 430.

It will serve no useful purpose to consider in detail, or to
sum up the evidence.  The general conclusions drawn there-
from will suffice.  It will be conceded, that the riparian
owners are few, and that but few individuals are engaged in
the use of the bayou for active transportation.  But the
public use is not limited to the number of persons actively
engaged in using it for such purpose.  The public interests
involved, so far as considered, must be determined by the
extent of the contributions to the trade and commercial in-
terests of the markets and places of business, where the
products transported are used or sold, by means of suitable
and available connections.  The bayou is within tide-water,
about four and a half miles above Mobile.  It is a recess of
the Chickasabogue creek, which is admitted to be a naviga-
ble water, and empties into Mobile river, whereby the bayou
has navigable water communication with the river, bay, and
harbor of Mobile.  The timber trade and interests of Mobile
have largely increased during the past few years, and are
still increasing ; and in consequence thereof, the value,
demand, and use of bayous, such as the one in question,
which afford safe and convenient room for booming and
storage, have correspondingly increased.  These facts have
caused the bayou to be more largely used than formerly, for
booming and floating logs and timber.  The evidence is in
conflict as to the quantity and quality of the timber on ad-
jacent lands ; and the weight of evidence is, that the greater
portion is brought from Chickasabogue creek into the bayou,
where it is stored to wait subsequent transportation to
market.  This fact, however, does not disprove, but rather
establishes its capability of being used for valuable floatage,
and does not affect its character of being a navigable
stream.

The witnesses for the defendant appear to have had larger
and more familiar knowledge of the capacity of the bayou,
than those for complainant.  Their evidence, one of whom
speaks from actual measurements and soundings, shows
that, in its natural state and ordinary capacity, it has suffi-

cient width, depth, and freedom from obstructions, to make it useful for purposes of trade and transportation, for a distance of about four miles from its mouth, estimating the length of both prongs, and of about three miles on its longest prong. And one of the two witnesses, examined on the part of complainant in reference to its navigability, testifies that it can be navigated for about the same distance, by steam tug-boats, barges, floats and rafts, not drawing exceeding four feet of water. While it is not, as said by SHAW, C. J., " every small creek, in which a fishing skiff or gunning canoe can be made to float at high water, which is deemed navigable; it would be a narrow rule to hold, that in this country, unless a river was capable of being navigated by steam or sail vessels, it could not be treated as a public highway. . . . Vessels of any kind that can float upon the water, whether propelled by animal power, by the wind, or by the agency of steam, are, or may become, the mode by which a vast commerce can be conducted; and it would be a mischievous rule that would exclude either in determining the navigability of a river." *The Montello*, 20 Wall., *supra*. From a consideration of the evidence, in view of the rule which imposes on complainant the *onus probandi*, we concur in the conclusion of the chancellor, that it is insufficient to show that the bayou in question is not a public and navigable water.

It is further insisted, that complainant is entitled to the injunction, on the ground, that defendant is estopped to deny his right to erect a boom across the entire bayou. The estoppel is founded on the facts, that defendant, having leased from Meaher " the water front and booming facilities of the bayou from its forks to its mouth," for a term of fifteen years from June 26, 1882, transferred, sold, and conveyed the unexpired term to Chase Spotswood, who sold, transferred, and conveyed it to complainant. We shall not inquire whether a court of equity will exercise its extraordinary power, under any circumstances, to prevent a party from abating or removing an indictable nuisance,—obstructing a navigable water-course being declared by statute a misdemeanor.—Code, 1876, § 4254. We do not construe the leases to convey, or to purport to convey, the bed or soil under the water, but the booming facilities as distinguished from the bed. The lease of the booming facilities, in connection with the water front, is a lease of the right of the owner, which appertains to the riparian title, to erect booms to aid in storing and floating logs to market. The booms may be extended far enough to reach navigable water, but at the peril of obstructing navigation. They should

[Pritchett v. Pollock & Co.]

bear relation to the shore or bank, and to the navigable water, so that the stream shall be subject to the paramount right of free navigation. This may impair or defeat private right, but private right must yield to public right. The lease transfers and assigns the right to construct proper booms adjacent to the water front, subject to the public right. Its terms neither express nor imply a right to appropriate and occupy the soil under the water.—*Deidrich v. Railway Co.*, 42 Mich. 248; *Atree v. Packet Co.*, 21 Wall. 389. A lease of the water front and booming facilities, in navigable water, does not carry a lease of the bed, but only such privileges as are consistent with public use. The defendant is not estopped to assert the public and navigable character of the bayou.

　　Affirmed.