STATE EX REL. HICKEY ET AL., RELATORS, *v.* DISTRICT
COURT ET AL., RESPONDENTS.

(No. 2,968.)

(Submitted December 29, 1910.    Decided January 16, 1911.)

[113 Pac. 472.]

*Default  Judgments — Vacation  on  Condition — Payment  of
Costs—Order of Court—Contemporaneous Construction—The-
ory  of  Case—Estates  of  Decedents—Pleadings — Service—
Time—Prohibition.*

District Courts—Orders—Contemporaneous Construction—Conclusiveness.
    1.   The rule that, where the terms of an agreement are in any respect
doubtful or uncertain, and the parties thereto have by their own con-
duct placed a construction upon it which is reasonable, such construc-
tion will be adopted by the courts, *held* applicable to an order of
court.

Same—Theory of Case—Appeal.
    2.   Where a cause has been tried on a well-defined theory in the dis-
trict court, neither party will be permitted on appeal to assume a
position antagonistic to such theory.

Default Judgments—Vacation on Condition—Payment of Costs—Construc-
tion of Order.
    3.   For failure to file a reply to their second amended answer within
a certain time, a judgment by default was entered in defendants' favor.
On the third day thereafter plaintiff moved the court to set aside
the judgment, assigning as grounds of the motion, inadvertence and
excusable neglect.   This the court did, "conditioned upon plaintiff
paying within five days all costs incurred by defendants since the filing
of the second amended answer."   At the same time the court granted
plaintiff five days within which to file a reply and set the cause for
trial, counsel for both parties waiving jury trial.   *Held,* under the
doctrine of contemporaneous construction, as evidenced by the conduct
of both court and counsel, that the order setting aside the default
judgment did not make the payment of costs incurred by defendants
a condition precedent to its becoming effective.

Same — When Premature — Estates of Decedents — Pleadings — Service —
Time.
    4.   Where one of several defendants, represented by the same counsel,
died pending the action, the authority of such counsel to represent him
ceased until substitution of his administrator.   In the interim between
the date of his death and such substitution, plaintiff was unable to
serve its reply upon anyone representing decedent's estate, but was
entitled to a reasonable time after substitution within which to do so.
Hence, where no time to file such pleading after substitution was al-
lowed, the entry of default, so far as it affected the estate of deceased,
was premature and the judgment a nullity.

APPLICATION by the state, on the relation of Edward Hickey,
as administrator of Michael A. Hickey, deceased, and others, for

a writ of prohibition against the district court of the Second Judicial District in and for the county of Silver Bow and one of its judges.   Dismissed.

*Mr. C. F. Kelley, Mr. W. B. Rodgers, Mr. L. O. Evans,* and *Mr. D. Gay Stivers* submitted a brief in behalf of Respondents. *Messrs. Rodgers* and *Evans* argued the cause orally.

"A formal order is not always required to set aside a judgment by default.   Any act of the court inconsistent therewith may operate to vacate the judgment." (6 Ency. of Pl. & Pr. 160; *Watson* v. *Harris,* 65 Tex. 61; *Pim* v. *St. Louis,* 122 Mo. 655, 27 S. W. 525; *Hestres* v. *Clements,* 21 Cal. 425; *Sawtelle* v. *Muncy,* 116 Cal. 435, 48 Pac. 387; *Cornell University* v. *Denny Hotel Co.,* 15 Wash. 433, 46 Pac. 655.)

If there be any doubt in the mind of the court about the true meaning of the order of June 21, 1909, this doubt must disappear and yield to the evident construction which was placed upon it by the court, and by both the defendants' and plaintiff's counsel.   Beyond all doubt, all parties construed the order of the court as being effectual for the purpose of immediately vacating and setting aside said judgment.   Having so construed said orders in the presence of plaintiff's counsel, the defendants will not now be heard to say that this construction was erroneous.   This proposition finds sure foundation in two well-known principles of law: First, the doctrine of practical construction; second, that where a party to a lawsuit construes an order made therein, or a pleading filed therein, or adopts a certain theory in regard to the same, and acts upon it without objection, he will not thereafter be heard to say that his own construction or his own theory was erroneous and incorrect, and urge another construction to the prejudice of the opposite party.   The doctrine of practical construction is, in substance, that where the parties interested in a contract, or in an order such as this, or other written instrument, join in construing the same in a certain way, this construction is binding upon the court, and is in law the proper construction. (*People* v.

*Murphy*, 119 Ill. 159, 6 N. E. 493; *Chicago* v. *Sheldon*, 9 Wall.
54, 19 L. Ed. 596; *Paxton* v. *Smith*, 41 Neb. 56, 59 N. W. 690;
*Nickerson* v. *Atchinson*, 17 Fed. 410, 3 McCrary, 455.)    In
consideration of orders such as the one which we are now con-
sidering, the courts give especial force to the construction placed
upon said orders by the counsel, as will be seen by an examina-
tion of the following: *Wolff & Co.* v. *Canadian Pac. Ry. Co.*,
123 Cal. 541, 56 Pac. 453; *Ransom et al.* v. *New York*, Fed.
Cas. No. 11,572, 4 Blatchf. 157; *Ex parte Ransom* v. *City of
New York*, 61 U. S. 581, 15 L. Ed. 1000.

To the effect that where a party to litigation construes an
order made therein, or adopts a certain theory in regard to the
same and acts upon it without objection, he will not thereafter
be heard to say that his own construction was erroneous and
incorrect, and urge another construction, or another theory to
the prejudice of the opposite party, see the following: *Fleming*
v. *Lockwood*, 36 Mont. 384, 122 Am. St. Rep. 375, 92 Pac. 962,
14 L. R. A., n. s., 628, 13 Ann. Cas. 263; *Meals* v. *De Soto
Mining Co.*, 33 Wash. 302, 74 Pac. 470; *Sherman* v. *Sweeny*,
29 Wash. 321, 69 Pac. 1117; *Talbott* v. *Butte City Water Co.*,
29 Mont. 17, 73 Pac. 1111; *Durning* v. *Walz*, 42 Or. 109, 71 Pac.
662.

The findings of the lower court, the petition of the relators and
the undisputed facts as they appear upon the record in this pro-
ceeding, each and all show conclusively that the condition men-
tioned in the order of June 21, 1909, and particularly the time
limit therein, even though it be regarded as a condition precedent,
was waived by the petitioners; and if such be true, this court can-
not prohibit the district court from trying the cause.    The condi-
tion mentioned in said order was a condition made for the benefit
of the defendants.    Any and every condition made for the benefit
of a party may be either released or waived.    If released or
waived, a strict compliance is not required.    This waiver may
be either express or implied.    The one is no stronger or more
effective than the other.    Whether a waiver has in fact been
made depends upon the conduct of the party, and how the
opposing party is entitled to view his conduct, but not upon

any secret belief or concealed intention of the party charged with such waiver. (*State ex rel. Caldwell* v. *District Court*, 17 Mont. 329, 42 Pac. 850; *Ransom* v. *New York, supra; Ex parte Ransom* v. *City of New York, supra; Ricketts* v. *Pollack*, 48 Misc. Rep. 348, 95 N. Y. Supp. 579; *Keefer* v. *Grand Trunk Ry. Co.*, 59 Hun, 627, 13 N. Y. Supp. 860; *James Sons & Co.* v. *Gott*, 55 W. Va. 223, 47 S. E. 649; *Cornell University* v. *Denny Hotel Co., supra; Green* v. *Brown*, 11 N. M. 658, 72 Pac. 18; *Sawtelle* v. *Muncy*, 116 Cal. 435, 48 Pac. 387; *Hestres* v. *Clements*, 21 Cal. 425; *Walker* v. *Cameron*, 78 Iowa, 315, 43 N. W. 199; *Vernia* v. *Lawson*, 54 Ind. 486; *Central Land Co.* v. *O'Benchain*, 92 Va. 130, 22 S. E. 879.)

The court ordered the plaintiff to pay all of defendants' costs incurred since the filing of the second amended complaint. Whenever by the law or order of the court something must be done, either by the party claiming his costs or by a ministerial officer, before the opposing party can know what costs to pay, the same must be done before such party can be put in default. (*Brown* v. *Brown*, 27 S. C. 153, 3 S. E. 70; *Southerland* v. *Sheffield*, 2 Wend. 293; *Ransom* v. *New York, supra.*)

In behalf of Relators, there was a brief by *Messrs. Maury & Templeman*, and *Mr. John Lindsay*. Oral argument by *Mr. H. L. Maury*.

It is contended that relators had waived the payment of the five dollars. The acts constituting the waiver are said to be: (1) The failure of any of their attorneys to demand payment of that sum, and (2) the stipulation entered into with counsel for plaintiff Washoe Copper Company, after the default had become absolute, five days after June 21, 1909, the condition not having been fulfilled, that the court might vacate the setting of the case for trial. When the stipulation was entered into, the five days had expired, and the judgment sought to be set aside was for all time final unless appealed from. (See authorities hereafter cited.) The proposition that an attorney cannot give away his client's rights is not a matter of discretion or

lightly to be considered. It has its roots in the constitutional foundations of the law. To hold in this case that after the rights of Hickey, Lindsay and others had matured, the condition remained unfulfilled for the five days, the judgment had matured, their attorney could donate their rights by any conduct of his, is to hold that Hickey and Lindsay can be deprived of their property without any process in law, and without any act of theirs. There would be but one method of escape from this sequence of reasoning, and that is, "Does the statute in force at the time permit it?" This escape has been completely barred by the decision of this court in *Harris* v. *Roote,* 28 Mont. 167, 72 Pac. 429.

Did the judgment become absolutely final, as far as the district court was concerned, on June 26, 1909? Where one comes into court seeking relief from neglect, and the court relieves him from the consequences thereof on condition that he place his adversary in the same situation financially that the latter was in before the neglect, and he does not except to the order fixing the condition, does not appeal from the order fixing the condition, does not state his inability to fulfill the condition or claim that the condition is oppressive in any way, but treats his adversaries' rights with forgetfulness amounting to contempt, he will not thereafter gain the favorable ear of a court of justice. Under such conditions the default stands. (*Hartman* v. *Olvera,* 49 Cal. 101; *Gregory* v. *Haynes,* 21 Cal. 443; *Willink* v. *Renwick,* 22 Wend. 608; *Sands* v. *McClelan,* 6 Cow. 582; *Friese* v. *Homeopathic Ins. Co.,* 107 Pa. 134; *Mabley* v. *Judge,* 41 Mich. 31, 1 N. W. 985.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In June, 1905, the Washoe Copper Company commenced an action in the district court of Silver Bow county against Michael A. Hickey and others to recover damages for trespasses upon certain real property and for an injunction to prevent the repetition of the trespasses. In its complaint the plaintiff

alleges that it is the owner and entitled to the possession of lots 12, 13, and 14, of block 12, Leggat & Foster's addition to the city of Butte, together with all the lodes, leads and minerals within each and all of said lots; that the defendants have theretofore trespassed upon the premises, extracted minerals therefrom, and threaten to continue such trespasses. In October, 1908, the defendants filed their second amended answer, in which they deny the allegations of ownership and right of possession in the plaintiff to a certain portion of the premises, which portion is described by metes and bounds. The defendants admit their entry upon the described portion and their purpose to continue operations. As an equitable counterclaim, the defendants allege that plaintiff's claim to the premises, if any it has, is founded upon certain placer locations of the ground, by John A. Leggat and others, which locations were carried to patent, and patent received and recorded. It is then alleged that at the date of the application for placer patent there existed upon the ground a certain well known lead, lode, or vein bearing valuable mineral, which known lead, lode or vein, together with twenty-five feet on each side thereof, constitutes the portion of the ground described by metes and bounds; that in the application for placer patent the locators did not apply for patent to any lead, lode or vein within the boundaries of their placer locations; that in 1903 Hickey, Lindsay and Lewis located the ground described by metes and bounds, as the Lizzie Fraction quartz lode mining claim, and thereafter did all things necessary to perfect their location and perpetuate the same, and thereafter made application for patent, which application was contested by the plaintiff company, and the proceedings were before the land department at the time the answer was filed. A motion was interposed to strike a part of the answer, and on February 23, 1909, sustained in an order which granted plaintiff twenty days within which to file a reply. The reply was not filed within the time allowed, and on March 30, 1909, the death of Michael A. Hickey, which occurred on January 28, 1909, was suggested to the court; Edward Hickey, special administrator of his estate, was substituted; and on motion of

counsel for defendants the default of plaintiff, for failure to reply, was entered, and judgment for the defendants quieting their title to the land described by metes and bounds was rendered and entered. On April 2 plaintiff moved to have the default set aside, assigning as reasons, among others, inadvertence and excusable neglect. A copy of the proposed reply was tendered with the motion. On June 21, 1909, this motion came on for hearing, was heard, and disposed of in an order of the court as follows: "After argument of counsel being heard and submitted, the court grants the said motion, conditioned upon the plaintiff paying within five days all costs incurred by defendants since the filing of the second amended answer. * * * Plaintiff was by the court granted five days to reply to the second amended answer. Counsel for both parties in open court waives trial by jury, and the case was by the court set for trial on Tuesday, September 7, 1909." At the same time, and in the presence of court and counsel for defendants, plaintiff filed its reply. On August 11, 1909, counsel for the respective parties stipulated that the setting of the cause for trial be vacated, and on August 30 the court vacated the setting pursuant to the stipulation. On April 11, 1910, defendants moved the court to dissolve all injunctions which had been issued in the cause at the instance of plaintiff; but, before this motion was heard, plaintiff moved the court for certain orders. On September 12, 1910, the court heard and denied both motions *in toto*. On September 19 the court filed, and had made a part of its former order, a memorandum explanatory of its order of September 12. On September 28, 1910, plaintiff filed in court its motion to have the cause placed upon the trial calendar for trial. On October 3, the time noticed for the hearing of the last motion, defendants presented to the court their written objections to the court hearing such motion, and thereafter took no further part in the proceedings. On October 3 the court overruled defendants' objections, granted the plaintiff's motion, and placed the cause on the trial calendar for trial upon the pleadings theretofore filed. Counsel for defendants then presented to this court their application for a writ of prohibition. An alter-

native writ was issued, and upon the return the respondents moved to quash, and the proceeding was submitted for determination.

The principal question arises upon a construction of the order made by the trial court on June 21, 1909. That order was made upon the motion of plaintiff to set aside the judgment, open the default, and permit a reply to be filed. The order reads: "The court grants the said motion, conditioned upon plaintiff paying, within five days, all costs incurred by defendants since the filing of the second amended answer." That the payment of costs was not intended to be a condition precedent to setting aside the default and judgment seems to us apparent: (1) The order is written in the present tense, and its effect is to set aside the judgment and open the default instanter. (2) The plaintiff was given five days within which to pay the costs. If the court intended that the payment of costs should be a condition precedent to opening the default and vacating the judgment, certainly language which more clearly expressed that intention could have been employed. (3) The amount of the costs was not specified. The judgment included five dollars costs; but the order includes all costs incurred by defendants since the filing of their second amended answer. Whether there were any costs other than the five dollars we do not know; but, in view of the language in which the order is couched, and other considerations hereafter to be noticed, it seems reasonable that the court intended that some claim for costs should be presented by the defendants who were in a position to know what costs they had incurred between the dates mentioned. (4) The court in effect construed its order as one operating *in præsenti:* (a) As a part of the same order, the court granted the plaintiff five days within which to file its reply. If the default and judgment were not set aside, the plaintiff had no right to file a reply, and it is only upon the theory that the order was intended to act *in præsenti* that there can be any justification whatever for the action of the court in granting leave to reply. Under this latter provision of the order, the reply might have been filed on the same day and immediately upon leave being granted—which

504 STATE EX REL. HICKEY v. DISTRICT COURT. [Dec. T. '10

was the fact in this instance—although the costs need not have been paid until the last hour of the fifth day thereafter. (b) The court at the time set the cause for trial. If the default and judgment had not been set aside, there was not any cause to be tried, and this part of the court's order would be ridiculous. It is only upon the theory that the order setting aside the judgment and default operated *in præsenti* that there can be any possible justification for this portion of the order. (5) Counsel for both parties also gave a like construction to the order. The minutes recite that, upon the order being made setting aside the default and judgment, "counsel for both parties in open court waived trial by jury." Waived trial of what? If the judgment and default had not been set aside, there was not anything to be tried, and the fact that counsel for defendants waived a jury trial is inexplicable upon any theory except that they understood the order to operate in the present.

If we were compelled to construe the order setting aside the default as if it stood alone, we might experience some difficulty. The courts have not agreed as to the meaning of such orders. In each of the following cases, it was held that the payment of the amount mentioned was a condition precedent to the order taking effect: *Gregory* v. *Haynes,* 21 Cal. 443; *Hartman* v. *Olvera,* 49 Cal. 101; *Sands* v. *M'Clelan,* 6 Cow. (N. Y.) 582; *Friese* v. *Homeopathic M. L. Ins. Co.,* 107 Pa. 134; *Mabley* v. *Superior Court,* 41 Mich. 31, 1 N. W. 985. On the contrary, in *Dana* v. *Gill,* 5 J. J. Marsh. (Ky.) 242, 20 Am. Dec. 255, the order read: "It is ordered that the nonsuit rendered herein be set aside, upon payment of costs." The court said: "What effect, then, shall that part of the order have, which declares the nonsuit to be set aside, upon payment of costs? We answer: No other than to impose an obligation upon the plaintiff to pay the costs occasioned by his default, and, if he does not, it may furnish a good cause for attachment, to compel their payment or justify suing out execution for the amount. * * * Our construction of the order setting aside the nonsuit in this case is that it is positive, and not contingent; and the language is that

usually employed by clerks to show that the nonsuit was set aside, and that the plaintiff should pay the costs.''

In *Gilliland* v. *Rappleyea*, 15 N. J. L. 138, the order was: ''That the verdict be set aside and a new trial granted on payment of costs.'' The court said: ''But the payment of costs, when it is ordered, is annexed as a condition upon which the party may have a new trial, and yet not strictly as a condition in such a sense that, if it is not performed, there shall be no new trial. It is rather an order on the party at whose instance the verdict has been set aside that he shall pay the costs of the first trial, which order, like other interlocutory orders, may be enforced by attachment.''

In *People ex rel. Attorney General* v. *Murphy*, 119 Ill. 159, 6 N. E. 488, the court said: ''It is a familiar rule of construction that when the terms of an agreement are in any respect doubtful or uncertain, and the parties to it have, by their own conduct, placed a construction upon it which is reasonable, such construction will be adopted by the courts, in the event of litigation concerning it.'' This rule may very well be said to be one of universal recognition. While it applies primarily to contracts and like instruments, we do not see any reason for its application to them which is not equally cogent for its application to an order of court. In fact, the supreme court of the United States appears to have laid great stress upon the theory of an order of court entertained and acted upon by the litigating parties in *Ex parte Ransom* v. *City of New York*, 20 How. 581, 15 L. Ed. 1000, where, in discussing a case somewhat similar to the one before us, in the course of the opinion it said: ''We concur in this view of the court, and we are also satisfied, from the course of the proceedings preparatory to the motion for the new trial, the hearing of that motion, and the turning of the case into a bill of exceptions with a view to a writ of error, it was the understanding of both parties that the judgment of the 12th of December was to be considered as vacated.''

It has been the rule in this state for many years that: ''When a cause has been tried upon a certain well-defined theory, neither party will be heard in this court, on oral argument, for the first

time to assume a position antagonistic to such theory.'' (*Talbott* v. *Butte City Water Co.*, 29 Mont. 17, 73 Pac. 1111.) The rule announced in *People* v. *Murphy* and recognized by the supreme court of the United States is known as the rule of practical or contemporaneous construction, and the reason for its application is the same as that for the rule announced in the *Talbott Case, viz.*: That a party will not be heard to shift his position to the prejudice of his adversary. The fact that counsel for defendants acted upon the order of June 21, 1909, as though it operated to set aside the judgment at that time, may well have led the plaintiff to believe that a memorandum of costs would be presented, and, until presented, the costs were not to be paid; or that the costs should be paid within five days if the cost bill was presented within that time. To hold that the payment of costs was a condition precedent to the order taking effect would do violence to the construction placed upon the order by the trial court and counsel for both parties, and would have the effect of denying a trial of the cause upon the merits; while to hold the contrary carries out the manifest understanding of the lower court and counsel and insures a trial upon the merits—a result which ought to be accomplished in every case if it can be without prejudice to any substantial right of either party. If there was not any other reason for our conclusion, we would not hesitate to declare this sufficient. There is, however, another consideration which seems to justify the same result.

The plaintiff was defaulted by reason of its failure to file a reply within twenty days after February 23, 1909. When the order fixing that time was made, Michael A. Hickey, one of the defendants and a necessary party, had died. The authority of the attorneys for defendants to represent him ceased until there was a substitution of his administrator, which was not made until March 30. From the date of his (Hickey's) death on January 28, until the substitution was made, there was not anyone upon whom service of a reply could be made so far as that defendant's interest was concerned. Under such circumstances, plaintiff was entitled to a reasonable time at least, after the substitution was made, to serve and file the reply; but there was

not any time allowed whatever, and the judgment of March 30, so far as it affected the estate of Michael A. Hickey, was entered prematurely and was a nullity. In *Palmer* v. *McMaster*, 8 Mont. 186, 19 Pac. 585, this court said: "A judgment by default entered too soon is as much a nullity as if it had been taken on a defective service." If, then, the default should not have been entered in the first instance, it should have been set aside without condition.

Upon the entire record as presented, we think the trial court had, and now has, jurisdiction to try the cause upon the merits, and its further proceeding will not be restrained. The motion to quash is sustained, and the proceeding is dismissed.

*Dismissed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

