WAITE, RESPONDENT, *v.* SHOEMAKER & CO., APPELLANT.

(No. 3,463.)

(Submitted January 11, 1915. Decided February 13, 1915.)

[146 Pac. 736.]

*Contracts—Partial Performance—Quantum Meruit—Election of Remedies — Inconsistent Pleadings — Fraud — Ratification — Difficulty in Performance—Reply—Estoppel—New Trial.*

Contracts—*Quantum Meruit*—Inconsistent Pleadings—Effect.
    1. Where, in an action to recover for services rendered, plaintiff in one count of his complaint declared upon a contract in writing and in another upon a *quantum meruit,* and in his reply sought to avoid the writing on the ground of fraud, he must be held to have abandoned the cause of action upon the contract, inasmuch as by the alleged misrepresentation a meeting of minds, or the formation of a contract, was prevented.

    [As to *quantum meruit* under special contracts, see note in 19 Am. Dec. 272.]

Pleading and Practice—Office of Reply.
    2. The reply is only responsive to matters alleged affirmatively in the answer, and cannot perform the office of amending the complaint or become the basis of recovery.

Contracts—Breach—Partial Recovery—Remedies.
    3. A party who stops short of full performance of an entire contract cannot sue upon a *quantum meruit* for any part of the work done; after full performance, however, he may sue upon the contract and state his cause of action in different counts to meet the exigencies of the case, or upon a *quantum meruit* alone.

    [As to when complete performance is essential to a cause of action *ex contractu,* see note in 59 Am. St. Rep. 277.]

Same—Partial Performance—Recovery on *Quantum Meruit,* When.

4.  Where departures from the stipulations of a contract are not substantial or intentional, and do not affect the entire result, the party at fault may recover on a *quantum meruit,* defendant being recompensed for all damages sustained by him because of plaintiff's delinquency.

Same—Fraud—Election of Remedies—Estoppel.

5.  A party who has been induced to enter into a contract by false representations and, upon making an effort to perform it, discovers that, by reason of conditions actually existing, substantial performance is not possible, may repudiate it and recover for the value of services actually rendered; if he does not elect to repudiate it but does elect to abide by its terms, he is estopped thereafter to allege misrepresentations as a ground for avoiding his obligations under them, and may recover thereafter on a *quantum meruit* only upon a showing of substantial performance under the rule declared in paragraph 4, *supra.*

[As to mode and necessity of pleading estoppel, see note in 27 Am. St. Rep. 344.]

Same—Fraud—Continued Performance—Ratification.

6.  Where performance in part has been accomplished before discovery of the fraud which induced plaintiff to enter into a contract, and repudiation of it is· impracticable, a continuance of performance will not be held a ratification precluding relief independently of the contract.

[As to burden of proving fairness of transaction, see note in Ann. Cas. 1912A, 704.]

Pleading and Practice—Theory of Case.

7.  A party, when bringing an action, must so frame his pleadings as to present some definite and certain theory upon which he predicates his prayer for relief; on appeal he will be held bound by the position thus assumed in the trial court, even though it be an erroneous one.

Contracts—Part Performance—*Quantum Meruit*—Evidence—Insufficiency.

8.  Evidence in an action to recover the value of services rendered under a contract to plow and sow certain lands, *held* not to show a substantial performance of the contract or that plaintiff's omissions and departures from its terms were unintentional or so inconsequential as not to affect the entire result; hence he was not entitled to recover under the rule announced in paragraph 4, *supra.*

Same—Substantial Performance—Jury Question.

9.  Whether or not a contract has been substantially performed is usually a question for the jury to determine.

Same—Difficulty in Performance—Effect.

10.  Difficulty encountered by the obligor whereby the performance of a contract cannot be accomplished without greater expense than contemplated by him, is not alone sufficient to justify him in abandoning his obligation or stopping short of a full and substantial discharge thereof.

Same—Performance to Satisfaction of Obligee—Meaning of Clause.

11.  Under a clause of a contract providing that the work called for shall be done to the satisfaction of the obligee, payment may not be capriciously refused on the ground that it is unsatisfactory, the requirement being met if the work be done in such a way as to be satisfactory to a reasonable person acting in good faith.

Same—View of Premises by Jury—Effect.

12.  The fact that the jury had visited and examined the land in controversy before rendering their verdict in favor of plaintiff, was not

sufficient to overcome the import of the statements and admissions of plaintiff and his witnesses as to the defective character of a work for which compensation was claimed.

New Trial—Hearing by Judge Other Than Trial Judge.
13.   The office of a district judge called in to determine a motion for a new trial in a cause heard by another judge was to decide whether the evidence as disclosed by the record, unaided by a recollection of the incidents of the trial, including a view of the witnesses, was sufficient to justify the verdict, and where the preponderance of the evidence thus viewed was decidedly against the conclusion reached by the jury, it was error to refuse a new trial.

[As to authority of successor to trial judge to pass upon motion for new trial, see note in Ann. Cas. 1914B, 1235.]

*Appeal from District Court, Fergus County; C. C. Hurley, Judge of the Seventh Judicial District, presiding.*

ACTION by Harry C. Waite against C. E. Shoemaker & Co. Judgment for plaintiff, and defendant appeals from an order denying its motion for a new trial. Reversed and remanded.

*Messrs. Belden & De Kalb,* for Appellant, submitted a brief; *Mr. H. L. De Kalb* argued the cause orally.

Plaintiff relied upon the written contract, and was thereby precluded from charging misrepresentation. Misrepresentation in the inception of a contract unquestionably entitles a party to avoid the contract; but he cannot stand upon the contract and at the same time say there is no contract because of fraud in its inception. The positions are inconsistent. One cannot assert both. (1 Page on Contracts, sec. 131.) Fraud in the inducement simply operates to make a contract voidable and not void, and the party claiming to have been defrauded makes the contract valid by electing with full knowledge of the facts to treat it as valid. (*Id.,* sec. 139.) Ratification may be evidenced in many ways, and is evidenced by the bringing of suit on the contract. (*Conrow* v. *Little,* 115 N. Y. 387, 5 L. R. A. 693, 22 N. E. 346; *Merrill* v. *Merrill,* 103 Cal. 287, 35 Pac. 768, 37 Pac. 392; *Wainwright* v. *Weske,* 82 Cal. 193, 23 Pac. 12; *Downer* v. *Smith,* 32 Vt. 1, 76 Am. Dec. 148; Page on Contracts, sec. 131; *Herbert* v. *Wagg,* 27 Okl. 674, 117 Pac. 209; *Mundt* v. *Simpkins,* 81 Neb. 1, 129 Am. St. Rep. 670, 115 N. W. 325.)

Complete performance is essential to cause of action *ex contractu.* (*Smith* v. *Brady,* 17 N. Y. 173, 72 Am. Dec. 442; *Stark* v. *Parker,* 2 Pick. 267, 13 Am. Dec. 425; *McMillan* v. *Vanderlip,* 12 Johns. 165, 7 Am. Dec. 299; *Simonton* v. *Kelly,* 1 Mont. 363; *Ryan* v. *Dunphy,* 4 Mont. 342, 1 Pac. 710; *Riddell* v. *Peck-Williamson H. & V. Co.,* 27 Mont. 44, 69 Pac. 241.)

The testimony shows that there was not a performance of the terms of the contract, and it affirmatively shows that the respondent failed to substantially perform the conditions thereof. (See *Franklin* v. *Schultz,* 23 Mont. 165, 57 Pac. 1037; *Elliott* v. *Caldwell,* 43 Minn. 357, 9 L. R. A. 52, 45 N. W. 845; *Spence* v. *Ham,* 163 N. Y. 220, 51 L. R. A. 238, 57 N. E. 412; *Nesbit* v. *Braker,* 104 App. Div. 393, 93 N. Y. Supp. 856; *Viles* v. *Barre etc. Traction Co.,* 79 Vt. 311, 65 Atl. 104; *Manning* v. *Ft. Atkinson School Dist. No. 6,* 124 Wis. 84, 102 N. W. 356.)    He tried to prove substantial compliance and failed.

The proportion that the value of the unfinished or defective work bears to the whole contract price has been considered in many cases as a basis for determination whether the contract has been substantially performed or not.    (See *Flaherty* v. *Miner,* 123 N. Y. 382, 25 N. E. 418; *Excelsior Terra Cotta Co.* v. *Harde,* 90 App. Div. 4, 85 N. Y. Supp. 732; *Rochkind* v. *Jacobson,* 126 App. Div. 357, 110 N. Y. Supp. 583.)    The question is sometimes a question of law.    (*Rochkind* v. *Jacobson,* 126 App. Div. 357, 110 N. Y. Supp. 583.)

Plaintiff is not permitted to rely upon an excuse after alleging full performance.    The alleged excuse was immaterial under the only possible theory of plaintiff upon which the case was tried, after the introduction of the contract in evidence.    (*Peek* v. *Steinberg,* 163 Cal. 127, 124 Pac. 834; *Daley* v. *Russ,* 86 Cal. 114, 24 Pac. 867; 9 Cyc. 747; *Walsh* v. *Hyatt,* 74 App. Div. 20, 77 N. Y. Supp. 8, 176 N. Y. 550, 68 N. E. 1125; *Young* v. *Stickney,* 46 Or. 101, 79 Pac. 345; *Neuberger* v. *Robbins,* 37 Utah, 197, 106 Pac. 933.)    Having put himself in the position of being obliged to rely upon the written contract, and having failed to sustain by sufficient evidence a claim for a *quantum meruit,* he was in

exactly the same position as though it were eliminated from the controversy. (*Hunt* v. *Tuttle,* 125 Iowa, 676, 101 N. W. 509; *Wade* v. *Nelson,* 119 Mo. App. 278, 95 S. W. 956; *Fordtran* v. *Stowers,* 52 Tex. Civ. App. 226, 113 S. W. 631; *Pettibone* v. *Lake View Town Co.,* 134 Cal. 227, 66 Pac. 218; *Manning* v. *School District,* 124 Wis. 84, 102 N. W. 356; *Davis* v. *Chase,* 159 Ind. 242, 95 Am. St. Rep. 294, 64 N. E. 88, 853.)

Plaintiff's case was wholly insufficient in law when he finished, for he had not shown what it would cost to remedy the omissions. (*Spence* v. *Ham,* 163 N. Y. 220, 51 L. R. A. 238, 57 N. E. 412; *Mitchell* v. *Caplinger,* 97 Ark. 278, 133 S. W. 1032; *Evans* v. *Howell,* 211 Ill. 85, 71 N. E. 854; *Dugue* v. *Levy,* 114 La. 21, 37 South. 995; *Lambert* v. *Jenkins,* 112 Va. 376, Ann. Cas. 1913B, 778, 71 S. E. 718; *Manning* v. *School District,* 124 Wis. 84, 102 N. W. 356.) Plaintiff did not show the value of the work actually done. He contented himself with showing the reasonable value of plowing, harrowing and seeding land in that vicinity, but left the question open as to how much value in services had been rendered defendant by his misguided efforts. The record is devoid of any such evidence. (*Gillis* v. *Cobe,* 177 Mass. 584, 59 N. E. 455; see, also, *Barber Asphalt Pav. Co.* v. *Loughlin,* 44 Tex. Civ. App. 580, 98 S. W. 948; *Manitowoc Steam Boiler Works* v. *Manitowoc Glue Co.,* 120 Wis. 1, 97 N. W. 515.)

Performance was not made to the satisfaction of the defendant. This subject is one which has received considerable attention from the courts. Two general rules may be adduced from the authorities: (1) Where the service to be performed is to be done to the satisfaction of the adversary party, and concerns a matter of taste or fancy, the adversary may exercise his choice arbitrarily, and his determination is final. (2) With the same provisions in the contract, if the service is such as does not involve taste or matters of fancy, the courts hold that the decision cannot be made arbitrarily, but must be made honestly and have some basis in fact. (3 Page on Contracts, sec. 1390.)

It cannot be said that defendant's decision was arbitrary in this case. It had the right to expect performance of the con-

tract. It had reasons for honest dissatisfaction. (3 Page on Contracts, 2160; *Adams etc. Works* v. *Schnader,* 155 Pa. 394, 35 Am. St. Rep. 893, 26 Atl. 745; *Barrett* v. *Raleigh etc. Coke Co.,* 51 W. Va. 416, 90 Am. St. Rep. 802, 41 S. E. 220; *Osborne & Co.* v. *Francis,* 38 W. Va. 312, 45 Am. St. Rep. 859, 18 S. E. 591.)

*Mr. Wm. M. Blackford* and *Mr. Chas. J. Marshall,* for Respondent, submitted a brief; *Mr. Blackford* argued the cause orally.

The evidence shows the delay of performance of the work was caused largely by the acts of appellant. This excused performance by respondent beyond the agreed period of completion. (*Weeks* v. *Little,* 89 N. Y. 569; *King Iron Bridge etc. Co.* v. *City of St. Louis,* 43 Fed. 768, 10 L. R. A. 826; *Dumke* v. *Puhlman,* 62 Wis. 18, 21 N. W. 820; *United States* v. *Peck,* 102 U. S. 64, 26 L. Ed. 46; *Dannat* v. *Fuller,* 120 N. Y. 554, 24 N. E. 815; *Griffin* v. *American Gold M. Co.,* 123 Fed. 286, 59 C. C. A. 301; *Wolf* v. *Marsh,* 54 Cal. 228, 3 Morr. Min. Rep. 204; *American Paper Bag Co.* v. *Van Nortwick,* 52 Fed. 752, 3 C. C. A. 274; *Smith* v. *Barber,* 153 Ind. 329, 53 N. E. 1014; *Starr* v. *Gregory Con. M. Co.,* 6 Mont. 487, 13 Pac. 195.)

Appellant complains of Instruction No. 5, in that the trial court after having charged the jury that a substantial compliance by the plaintiff with the contract in doing the work was required, further said: ''That the work should be done in a manner satisfactory to a reasonable person.'' Notwithstanding the contract provides that the work should be done to the satisfaction of the defendant, the trial court undoubtedly stated the correct rule as applicable to a plowing and seeding contract in its charge to the jury, that it was sufficient if the work done was satisfactory to a reasonable person. ''A stipulation in a contract to perform to the satisfaction of one of the parties only calls for such performance as should be satisfactory to a reasonable person.'' (*Gladding, McBean & Co.* v. *Montgomery,* 20 Cal. App. 276, 128 Pac. 790; *Keeler* v. *Clifford,* 165 Ill. 544, 46

N. E. 248; *Doll* v. *Noble,* 116 N. Y. 230, 15 Am. St. Rep. 398, 5 L. R. A. 554, 22 N. E. 406; *Bowery Nat. Bank* v. *Mayor,* 63 N. Y. 336; *Schliess* v. *City of Grand Rapids,* 131 Mich. 52, 90 N. W. 700; *Carpenter* v. *Virginia-Carolina Chem. Co.,* 98 Va. 177, 35 S. E. 358; *Anderson* v. *Frye & Bruhn,* 69 Wash. 89, 124 Pac. 499; *Barnett* v. *Sweringen,* 77 Mo. App. 64; *Electric Lighting Co.* v. *Elder,* 115 Ala. 138, 21 South. 983.)

In *Blankenship* v. *Decker,* 34 Mont. 292, this court had this to say upon this question: "Upon a complete performance of an express contract for services, at a stipulated compensation, there seems to be no sound reason why a recovery may not be had upon the *quantum meruit.*" And the court afterward affirmed this doctrine. (*Newman* v. *Grant,* 36 Mont. 77, 92 Pac. 43.) "When one performs services for another on a special contract, and for any reason, except a voluntary abandonment, fails to fully comply with his contract, and the service and material have been of value to him for whom they were rendered and furnished, he may recover for such material and services their reasonable value, after deducting therefrom any damages the party for whom such materials were furnished and services were rendered has sustained by reason of such failure." (*Gove* v. *Island City Merc. etc. Co.,* 19 Or. 363, 24 Pac. 521; *Steeples* v. *Newton,* 7 Or. 110, 33 Am. Rep. 705; *Stillwell etc. Mfg. Co.* v. *Phelps,* 130 U. S. 520, 32 L. Ed. 1035, 9 Sup. Ct. Rep. 607; *Katz* v. *Bedford,* 77 Cal. 319, 322, 1 L. R. A. 826, 19 Pac. 523; *Trowbridge* v. *Barrett,* 30 Wis. 661; *Woodward* v. *Fuller,* 80 N. Y. 312; *Heckmann* v. *Pinkney,* 81 N. Y. 211; *Hayward* v. *Leonard,* 7 Pick. 181, 19 Am. Dec. 268; 9 Cyc. 685.)

Where one has performed work in good faith, though not exactly in the manner or within the time prescribed by the contract, and it has been accepted, he may recover its reasonable value under the common counts in *assumpsit.* (*Standard Gaslight Co.* v. *Wood,* 61 Fed. 74, 9 C. C. A. 362; *Columbus Safe Deposit Co.* v. *Burke,* 88 Fed. 630, 32 C. C. A. 67; *Orem* v. *Keelty,* 85 Md. 337, 36 Atl. 1030.) "The fact that work was defectively done is no defense to an action to recover the con-

tract price, except by way of recoupment of damages sustained by the defendant by reason of the defects, and to get the benefit of this defense he must allege and prove his damages according to the rules by which such damages are measured." (9 Cyc. 687, par. 3; *Sheppard* v. *Dowling,* 103 Ala. 563, 15 South. 846; *Wadleigh* v. *Town of Sutton,* 6 N. H. 15, 23 Am. Dec. 704; *Veazie* v. *Bangor,* 51 Me. 509.)

The respondent at the time of entering into the contract did not know of the gravelly and rocky condition of portions of the ground, while appellant did know it, and strict performance therewith by respondent as to such portions was excused. "Where the party making the representation has had means and opportunities to know the facts concerning the subject matter of the contract, which the other party has not had and cannot have without going to the expense and delay of an investigation of matters at a distance, we see no reason why he may not rely upon such representations of fact. In our opinion, the party making such representations cannot be heard to say: 'Their falsity might have been known by an investigation of the facts, and had the other party not been so credulous as to reply upon my representations, he would not have been deceived.' " (Bigelow on Fraud, 67; 9 Cyc. 429, 430; *Hingston* v. *Smith Co.,* 114 Fed. 296, 52 C. C. A. 206; *Hicks* v. *Stevens,* 121 Ill. 186, 11 N. E. 241; *Hale* v. *Philbrick,* 42 Iowa, 81; *Faribault* v. *Sater,* 13 Minn. 210 (223) ; *Eaton* v. *Winnie,* 20 Mich. 156, 4 Am. Rep. 380, 381; *Stewart* v. *Stearns,* 63 N. H. 99, 56 Am. Rep. 496; *Cottrill* v. *Krum,* 100 Mo. 397, 18 Am. St. Rep. 549, 13 S. W. 753; *Dambmann* v. *Schulting,* 75 N. Y. 55; *Clark* v. *Ralls* (Iowa), 24 N. W. 567; 1 Page on Contracts, sec. 121.)

Whether a contract has been substantially performed is a question of fact to be determined from the facts and circumstances in the case, and the finding of the trial court thereon is conclusive as upon any other question of fact. (*Harlan* v. *Stufflebeem,* 87 Cal. 508, 25 Pac. 686.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action to recover of the defendant corporation the value of services. alleged to have been rendered to it by the plaintiff. The cause was tried by Hon. E. K. Cheadle, sitting with a jury, which returned special findings and a general verdict for plaintiff for $1,774.25. Judgment was entered for this amount and costs. Judge Cheadle having thereafter, and prior to the submission of defendant's motion for a new trial, retired from office, and Hon. Roy E. Ayers, his successor, being disqualified by reason of interest, the motion was heard and determined adversely to defendant by Hon. C. C. Hurley, judge of the seventh district. The appeal is from the order denying the motion.

On August 18, 1911, the plaintiff entered into a written contract with the defendant, of which, omitting formal recitals, the following is a copy: "It is hereby agreed that the party of the first part. (plaintiff) is to plow, work down, and sow to winter wheat all that part of the following described land, which is now under cultivation: [Here is described the land belonging to the defendant, situate in Fergus county and consisting of one entire section.] This work to be commenced by the party of the first part within three days after notice by the party of the second part, and the entire job of plowing, working down, and seeding to be completed by September 15, 1911. It is agreed that the party of the first part is to so plow and work down the land above mentioned as to prepare a good seed bed, the plowing to be from four to six inches deep, with an average depth of at least four and one-half inches and a minimum depth of four inches, all the work to be done to the satisfaction of the party of the second part. It is agreed that all machinery and implements necessary to accomplish the work contemplated by this contract are to be furnished by the party of the first part at his own expense, but that the seed wheat is to be furnished on the ground by the party of the second part. It is agreed that the party of the first part is to receive as compensa-

tion for the work above described the sum of three and 50/100 dollars ($3.50) per acre."

It is alleged in the complaint that all of the land described which was under cultivation at the time the contract was entered into consisted of 595 acres; that plaintiff, after notice by defendant, began the work, and diligently prosecuted it to completion, duly performing all the conditions of the contract; that he plowed, worked down and sowed to winter wheat 595 acres, completing the work on October 15, 1911; and that immediately thereupon there became due to him from the defendant, reckoning at the price of $3.50 per acre, the sum of $2,082.50, no part of which has been paid, though frequent demand for payment has been made. In a second count plaintiff seeks recovery upon a *quantum meruit*, alleging the reasonable value of his services to be $2,082.50.

The answer, admitting the execution of the contract as alleged, denies that the plaintiff plowed any greater number of acres than 580; denies that he began to plow within the time specified in the contract; denies that the contract was executed according to its terms. In a further separate defense, by way of counterclaim, alleging full performance on its part, defendant sets forth various particulars in which the plaintiff failed to fulfill the contract, *viz.*: To begin the work at the time specified in the contract; to complete it by the time specified; to plow the land to the depth required, or to so work it down as to prepare a good seed bed, or to accomplish the work to the satisfaction of the defendant. It is alleged that, because of the failure of plaintiff to comply with the contract in the particulars above mentioned, and before the plowing had been completed or any seeding done, the defendant notified plaintiff to cease work and to leave the premises. It is further alleged that, by reason of plaintiff's delinquencies above alleged, the defendant was damaged in the sum of $5,000. The answer to the *quantum meruit* count denies generally all the allegations therein, except that plaintiff made demand upon defendant for the payment of the sum claimed to be due. It further alleges a counterclaim for

damages in the sum of $5,000 for failure of plaintiff to com-
ply with the contract in the particulars enumerated in the
counterclaim to the first count. Plaintiff's reply admits that he
did not complete the work within the time specified in the con-
tract, assigning as a reason therefor that the defendant withheld
the premises so that he could not begin it earlier. He also ad-
mits that he did not plow all the land to the depth required,
but alleges that he complied fully with the contract in this
regard whenever it was not impossible to do so by reason of
the rocky and stony character of the soil. He denies all the
other allegations of both counterclaims. As a further general
reply it is alleged, in substance, that at the time plaintiff entered
into the contract with the defendant, he was wholly un-
acquainted with the character of the land of defendant, the sub-
ject of the contract; that defendant's agent represented to him
that the land was stubble land which had previously all been
plowed and cultivated; that it was not stony or rocky in char-
acter, but fine farming land, free from rocks and stone, and
offering no obstacle to the accomplishment of the work which
plaintiff undertook to do, whereas, in fact, large areas of it had
never been plowed or cultivated, and was stony and rocky in
character, by reason of which it was impossible for plaintiff to
plow it to the required depth or to prepare it for seeding as in
the contract provided, all of which made it impossible for him
to comply with the terms of the contract in this behalf; that the
defendant well knew that these representations were false, and
were made for the purpose of inducing plaintiff to enter into
the contract; and that plaintiff entered into it relying upon the
representations so made to him, whereas, if the character and
condition of the land had been disclosed to him, he would not
have done so. It is alleged further that the defendant greatly
delayed and hindered plaintiff in beginning and completing the
work by failing to remove the crop then standing upon the land,
and by leaving upon the land the straw from this crop, render-
ing it exceedingly difficult to plow the land at all; but that,
notwithstanding these acts of the defendant and its false repre-

sentations, plaintiff entered upon the land as soon as he could, and continued diligently in the prosecution of the work to its completion in the best manner possible under the circumstances.

The sufficiency of the evidence to justify a verdict for the plaintiff in any amount was challenged by a motion for nonsuit, and also on the motion for a new trial. It is contended that it did not present a case for the jury, because, the contract being admitted, and it appearing without controversy that the plaintiff had failed in substantial particulars to perform it to the satisfaction of defendant, he cannot recover either upon the contract or upon a *quantum meruit.* It is also contended that, if it be conceded that when a party has been induced to enter into a contract by means of fraudulent representations, and has undertaken to perform, and has performed, it to the best of his ability under the circumstances as they are found to exist, he may by his allegations and proof avoid the contract altogether and recover the value of the services actually rendered, the evidence was insufficient to justify recovery on this theory.

The foregoing synopsis of the pleadings discloses a complete departure in the reply from the issues tendered by the complaint. No effort was made by motion or otherwise prior to or during the trial to eliminate the confusion in the issues arising out of this departure. Manifestly, if the plaintiff was induced [1] to enter into the engagement by fraud and misrepresentation by the defendant, there was no meeting of minds of the parties, with the result that there was no contract. Plaintiff could not declare upon the contract, and at the same time avoid it on the ground of fraud, and nevertheless recover upon proof of performance of it, either in whole or in part. His reply being inconsistent with the complaint, he must be held to have abandoned the cause of action upon the contract and have based his right to recover exclusively upon the theory that, having rendered to the defendant services of substantial value, the law cast upon it the obligation to pay for them. The reply, being merely responsive to matters alleged affirmatively in the answer, [2] cannot perform the office of amending the complaint, nor

itself become the basis of recovery. (*Thornton* v. *Kaufman,* 35 Mont. 181, 88 Pac. 796; *Manuel* v. *Turner,* 36 Mont. 512, 93 Pac. 808; 9 Cyc. 747.) If the allegations of the reply were true, the allegations of the first count in the complaint were manifestly untrue, with the result that the question whether the plaintiff performed the contract according to its terms was not a triable issue. Nor was there presented a triable issue under the second count upon the question whether the contract had been substantially performed. Judging from the instructions submitted to the jury, the court seems not to have noticed the incongruity disclosed by the pleadings, and to have proceeded upon the assumption that recovery might be had upon any one of three theories, according as the evidence tended to support any one of them, *viz.:* (1) Upon the count on the special contract, if, in the opinion of the jury, the evidence disclosed a substantial performance by the plaintiff so far as the result ought to be satisfactory to defendant as a reasonable person; (2) upon the *quantum meruit* count, if the evidence disclosed a like performance; or (3) upon the *quantum meruit,* though the result was unsatisfactory to the defendant, and it appeared that the contract was void on account of defendant's fraud by which it induced plaintiff to enter into it.

That the contract in question was entire is obvious. The intention of the parties, as is manifested by their written engagement, was that the defendant was not to become indebted to the plaintiff in any amount until the work had been completed to its satisfaction. No time being named when the consideration was to become due, the law made it due in its entirety upon full performance by the plaintiff. Full performance in all substantial particulars, to the satisfaction of the defendant, was a condition precedent to be fulfilled before plaintiff was entitled to demand payment of the stipulated price or any part of it. (*Riddell* v. *Peck-Williamson H. & V. Co.,* 27 Mont. 44, 69 Pac. **[3]** 241.) As long as an entire contract remains open—that is, unperformed—the party who has not done his part cannot sue upon a *quantum meruit* for any portion of the consideration.

The action will be defeated upon allegation and proof of the special contract and that plaintiff has stopped short of full performance. (*Riddell* v. *Peck-Williamson H. & V. Co., supra; Gove* v. *Island City M. & M. Co.,* 19 Or. 363, 24 Pac. 521; *Smith* v. *Brady,* 17 N. Y. 173, 72 Am. Dec. 442.) When, however, the contract has been fully performed, the plaintiff may state his cause of action in different counts to meet the exigencies of the case as disclosed by the evidence, or he may sue upon a *quantum meruit* alone. (*Blankenship* v. *Decker,* 34 Mont. 292, 85 Pac. 1035.) Recovery upon the *quantum meruit* in such a case will not be defeated by proof of the special contract; on the contrary, nothing remaining but the duty to pay, the special contract is made the *quantum meruit* in the case. (*Blankenship* v. *Decker, supra; Neuman* v. *Grant,* 36 Mont. 77, 92 Pac. 43; *Metcalf Co.* v. *Gilbert,* 19 Wyo. 331, 116 Pac. 1017; *Shepard* v. *Mills,* 173 Ill. 223, 50 N. E. 709; *Burgess* v. *Helm,* 24 Nev. 242, 51 Pac. 1025; 5 Ency. Pl. & Pr. 323.)

There are exceptions to the general rule that a failure of full performance is conclusive of plaintiff's right to recover. These are cases in which the departures from the stipulations in the [4] contract are not substantial and intentional, and do not affect the entire result, and the defendant has received benefits which it would be unjust to permit him to retain without paying anything. This is particularly true of building contracts. In such a case the law implies a promise on the part of the adverse party to pay what the benefit is worth, and permits recovery for it upon a *quantum meruit,* provided the defendant may re-coup all damages sustained by him by reason of plaintiff's delinquency. In such cases the parties cannot rescind and stand *in statu quo,* and it is but just that compensation should be made by the adverse party for the actual benefit received. The following cases, taken from among many cited in plaintiff's brief, support this doctrine: *Gove* v. *Island City M. & M. Co., supra; Katz* v. *Bedford,* 77 Cal. 319, 1 L. R. A. 826, 19 Pac. 523; *Stillwell etc. Mfg. Co.* v. *Phelps,* 130 U. S. 520, 32 L. Ed. 1035, 9 Sup. Ct. Rep. 601; *Woodward* v. *Fuller,* 80 N. Y. 312; *Hayward*

v. *Leonard,* 7 Pick. (Mass.) 181, 19 Am. Dec. 268; *Trowbridge* v.
*Barrett,* 30 Wis. 661; *Walsh* v. *Jenvey,* 85 Md. 240, 36 Atl. 817,
38 Atl. 938. We think it is supported by the great weight of
authority. As was said, however, in *Phillip* v. *Gallant,* 62 N. Y.
256: "There must be no willful or intentional departure, and the
defects must not pervade the whole, or be so essential as that the
object which the parties intended to accomplish—to have a speci-
fied amount of work performed in a particular manner—is not ac-
complished." (See, also, *Woodward* v. *Fuller, supra,* and *Sinclair*
v. *Tallmadge,* 35 Barb. (N. Y.) 602.) To permit a plaintiff to
recover, though it appears that he has willfully disregarded his
engagement in essential particulars, would be for the law to en-
courage parties to be delinquent in the performance of their
solemn engagements; whereas its policy is to compel observance
of them. (*Clifton* v. *Willson,* 47 Mont. 305, 132 Pac. 424.)

We think it a proposition not open to dispute that, if a party
has been induced to enter into a contract by false representa-
[5] tions, and, upon making an effort to perform it, discovers
that, by reason of conditions actually existing, substantial per-
formance of it is not possible, he may repudiate it and recover
for the value of services actually rendered. In such case it is
not competent for the adverse party to say that he obtained
the benefits by fraud, and not by contract, and that he will
not pay for them. It seems equally beyond question that, if
upon discovery of the fraud, the injured party does not elect
to repudiate the contract, but does elect to abide by its terms,
he must be held to have elected to be bound by them, and to be
disabled thereafter from alleging misrepresentations as a
ground for avoiding his obligations under them. He must then
recover, if at all, upon a showing of substantial performance, or
for substantial benefits conferred, under the exception to the
general rule in the cases cited *supra.* (1 Page on Contracts,
sec. 39; *Downer* v. *Smith,* 32 Vt. 1, 76 Am. Dec. 148; *Mundt* v
*Simpkins,* 81 Neb. 1, 129 Am. St. Rep. 670, 115 N. W. 325.)
[6] If, however, performance in part has been accomplished
before discovery of the fraud, and repudiation of the contract

is impracticable, a continuance of performance will not be held to be a ratification precluding relief independently of the contract. (*Sell* v. *Mississippi River Logging Co.,* 88 Wis. 581, 60 N. W. 1065.)

It is incumbent upon a party, when he brings an action, to [7] so frame his pleadings as to present some definite, certain theory upon which he predicates his relief. (*Herbert* v. *Wagg,* 27 Okl. 674, 117 Pac. 209; 21 Ency. Pl. & Pr. 649.) On appeal he will be held bound by the position assumed by him in the trial court, even though his position is erroneous. (*Talbott* v. *Butte City W. Co.,* 29 Mont. 17, 73 Pac. 1111; *State ex rel. Hickey* v. *District Court,* 42 Mont. 496, Ann. Cas. 1912B, 246, 113 Pac. 472.) He will not be heard to say that the court committed error in adopting the theory he assumed. The difficulty confronting us in this case, however, has been to ascertain upon what theory plaintiff predicated his right to recover. We have therefore directed our effort to ascertain whether the verdict ought to be sustained upon any theory which we can gather from the pleadings as we find them.

The evidence is so voluminous that we cannot within any rea-[8] sonable space set it forth and examine it in detail. The following is a summary narrative of what plaintiff's evidence tends to show: The land in question had never been plowed or cultivated until the year 1910. Plaintiff began work about the middle of September, 1911. The plowing was finished on October 11, and the seeding four days later. In all about 580 acres were plowed and seeded. The work was not done by plaintiff himself, but by others who owned machine plows, whose services he secured. It was understood by the parties when the contract was drawn that, to work down the land in order to make a good seed bed, it was necessary to follow the plows with harrows and floats. There is no controversy but that the phrase "to work down" included harrowing and leveling. These floats consisted of heavy planks so connected together as to form drags, which were drawn by the plow engines following the plows, to smooth the surface and make it even. The floats were discarded during

the course of the work, and were not used at all on 375 acres. The cost of the use of them was twenty-five cents an acre. According to one of plaintiff's witnesses, both harrows and floats were discarded. The reason assigned for doing this was that to use them tended to pile up the plowed ground and to make lumps or ridges upon the surface. The reasonable value of plowing and working down with floats and harrows and seeding was $3.50 an acre. Two per cent of the ground was not plowed at all. Seventy-five acres were not capable of being plowed to the depth required by the contract. These portions were not plowed to any appreciable depth. This was due to the nature of the ground, which was traversed in places by stony and gravelly ridges. It would be difficult under any circumstances to plow these portions to meet the requirements of the contract. The plows did not go down on the land where the stubble had not been burned to a depth greater than three and one-half or four inches. Plaintiff stated: ''Before entering into the contract I had a conversation with Mr. Shoemaker [president of defendant] in reference to this plowing. Mr. Shoemaker told me that the land was well plowed, that it was as good a piece of plowland as there was in this county. I said to him: 'I haven't got time to examine it, and will have to take your representations, Mr. Shoemaker. How about the rock?' He said the rock had been taken off, there was practically no rock on it. 'Was it well plowed last year?' 'Yes, sir,' he says, 'there was an elegant job of plowing on it last year.' * * * When I entered upon the ground to complete this contract with the Shoemaker Company I found that the original plowing (the plowing done the year before) was very shallow and very poor in a good many places on this land. It had been plowed once before; just been broke. With reference to the stony or rocky portion of the land, I found that there were many streaks or ridges containing quantities of rock and gravel—a sort of hardpan; also found on the northwest corner of the section a considerable piece that had never been plowed. I can't tell the reason why, with the exception that there are lots of rock on it—worlds of rock on it.

With reference to the gravel on these rocky ridges through the land, I will say that there was considerable gravel and surface rocks in these streaks they went through. The gravel was right at the surface. These rocky ridges, some of them went clear across, and some of them diagonally cutting across the corner.''

Thomas Vickery, who was in charge of one of the two plow machines, stated that one-half of the area plowed by his machine —415 acres—was plowed two and one-half inches deep, and the other half to the depth of six inches. Another witness who was employed by Vickery stated that one-half the land was so stony that it could not be plowed. On two-thirds of the other half the plow went down to a depth of five or six inches; while on the other one-third it went down to a depth of from three and one-half to five inches. On some of the land the stubble was not turned under.

Thomas Chaney, who was in charge of another machine which plowed about 180 acres, said the plowing done by his machine would average from two and one-half to eight inches; one-third of this area was rocky and gravelly, and could not be plowed well. The average depth reached by his machine was nearly four and one-half inches.

Marion Maury did the seeding. Bert Grose, who was employed by him, expressed the opinion that 70 acres were neither plowed nor drilled, and that there were 550 (?) acres that would be considered a good job of plowing and drilling.

Stephen Anderson, also employed by Vickery, stated that, in his opinion, one-third of the ground was not properly plowed. The reason why the plowing was not better upon the portion plowed by Vickery was that it was stony and gravelly. The rest of it was plowed to the depth of four, four and one-half and five inches.

Roy L. McDonald, a practical farmer and disinterested witness who examined the land the week before the trial, stated that in places it was so gravelly that it could not be well plowed at the season of the year (in September) the plowing was done. Nearly one-third had not been plowed deeper than two inches;

otherwise a good job had been done by the plaintiff. On this area, he said, he did not think a better job could have been done.

Besides giving the excuse that the ground could not be plowed to meet the requirements of the contract because of its stony and gravelly character, plaintiff introduced evidence to show that he was hindered in completing the work, and prevented from plowing to the depth required, by stubble and straw left upon the ground by the harvesting machine which the plows followed. It appears that in many places this was burned off by those engaged in plowing, while in others it was not. The impediment furnished by it was also assigned as a reason the use of the floats and harrows had been abandoned. On or about September 30 Mr. Shoemaker went upon the ground to observe how the work was being done, having learned that it was not being done as required by the contract. The plaintiff and others were present. Recounting the conversation which occurred at that time, the plaintiff said: ''After he had told me he would not pay a nickel for the work that was done, in the presence of four or five others, I said, 'I don't know what I will do about it.' He says, 'I don't care, Mr. Waite, what you do about it; I won't pay a nickel for it.' The others turned around and walked away. Mr. Shoemaker and I walked ahead, and he kept calling my attention to the shallowness of the plowing. He says, 'You can see it doesn't run four and one-half inches deep'; and he says, 'I won't pay a nickel for it.' 'Well,' I says, 'then I have made up my mind just what I will do. I will go over there and tell both these rigs to get off here.' He says, 'No; don't do that; go over and tell them to replow it; make them replow it for you.' 'Well,' I says, 'I will attend to it some way'; and we left. In that conversation there was nothing said that if the rest of it was plowed it would have to be plowed according to the terms of the contract, if I expected to get my money; nothing further than what I have testified to; that is all. There never was any complaint made to me because the work was not done on time.''

After the work was completed and plaintiff made demand for payment, the refusal by the defendant was put upon the ground that plaintiff had failed to observe the requirements of the contract. The seeding was begun on October 9 and finished on October 15. The defendant had theretofore delivered the seed upon the ground where it was lying in sacks. Prior to the beginning of this part of the work, and on October 4, plaintiff made inquiry of Mr. Shoemaker by 'phone concerning the use of it. Shoemaker then told him, in effect, not to go forward with the seeding, saying: "If you seed that ground you do it at your peril." The conversation discloses that the reason for this statement was that Shoemaker was dissatisfied because the land had not been prepared as required by the contract. There was other evidence showing that Mr. Shoemaker had expressed to plaintiff dissatisfaction with the way in which the work had been done.

Defendant's evidence did not in any way aid plaintiff's case. On the contrary, it tended to emphasize the admitted defaults of the plaintiff. It also controverted strongly plaintiff's evidence to the effect that portions of the cultivable land had not been well broken the previous year. There was evidence showing that, while it was new or sod land, it had been plowed for the first time the year before, and had all been well plowed once, and portions of it twice. The crop produced showed an average of twenty bushels to the acre. There was also evidence tending to show that within a week prior to the trial, which occurred in the early part of May, 1912, the witness Hart, who had done the plowing in 1910, at the instance of the defendant, plowed portions of the land which plaintiff had identified as so stony and gravelly that they could not be plowed. As to the difficulty encountered in breaking the sod in 1910, this witness stated: "I did not find anything there that impeded or tended to impede the work I contracted to do, any more than there was a couple of little ridges that had a little gravel on them; probably might have been three acres in the two ridges." His testimony showed that his con-

tract for breaking the sod covered 300 acres. His statement was illustrated by several photographs taken soon after the plowing done just previous to the trial, and tended strongly to establish the fact that the portions of the land which plaintiff claimed could not be plowed had been plowed by him to the depth of from six to twelve inches. He was corroborated materially by other witnesses, and was not directly contradicted by any. The circumstances under which this plowing was done were shown to be not materially different from those existing at the time plaintiff did the work. Several of the photographs introduced tended to show that in many places the plowing done by the plaintiff was not of sufficient depth to uproot the stubble left from the crop of the previous year. There was evidence by several witnesses that in many places the stubble had not been disturbed. Comparative measurements were also made of the depth to which Hart plowed the ground, and the depth to which plaintiff had plowed the same ground the fall before. There was little evidence of substantial character introduced tending to show the condition of the crop which had been sown by the plaintiff. The photographs indicated that at the time the plowing was done and the measurements made there was no visible appearance of a growing crop. So far as there was any evidence on the subject, it served rather to show that the crop would prove a substantial failure. Defendant did not notify plaintiff when he should begin the work. The machines were started as soon as the harvesting had sufficiently advanced to permit this to be done. No complaint was made until the defendant filed its answer in this case that the work was not completed within the required time. By his own admissions plaintiff knew when he entered into the contract that the land was covered with such straw and stubble as would be left upon it during the course of harvesting. All evidence as to these matters we deem immaterial to consider, in the light of the other evidence and the admissions of the parties, express or implied. It does not tend to

establish any substantial breach of the contract or fraud by which plaintiff was deceived to his prejudice.

Whether or not there has been a substantial performance of [9] a contract is usually, of necessity, a question for the jury (*Phillip* v. *Gallant, supra*), for the reason that the conclusion must be drawn from conflicting statements and opinions of witnesses. In this case, however, viewing the evidence as a whole, there is no substantial conflict in the statements of the plaintiff and his witnesses, as among themselves, or in their statements, when compared with those of the defendant, except as to the extent of plaintiff's omissions. The question is therefore: Does the evidence, giving it its full probative value, establish a substantial performance of the contract, or that plaintiff's omissions and departures from its terms were unintentional and so inconsequential as not to affect the entire result? Plaintiff knew when he entered into the contract that he was to plow, work down and seed all the cultivable land. These three things were by the parties deemed to be, and were, essential; for all were necessary steps to be taken in order that the defendant might realize the result which he could ordinarily expect at the end of the season—*viz.,* a crop of grain. The contract required all the ground to be plowed to a minimum depth of four inches. By plaintiff's own showing it definitely appears that one-half of the area gone over by Vickery could not be plowed, and therefore was not plowed, and that a portion of the rest—one-third—was not plowed to the minumum depth. Of the area plowed by Chaney, one-third was not plowed well, because it was rocky and gravelly. Over a substantial portion of this area the minimum depth was not maintained. The "working down" was entirely omitted on 375 acres—more than one-half of the whole area. The seeding was not done at all on seventy acres. It is entirely competent for one to contract to do a difficult piece of work in a particular way. The fact that it is discovered to be more difficult than was anticipated is no reason why the engagement to accomplish it should not be observed. Aside from any rep-

resentations made to him by the obligee upon which he was
**[10]** entitled to rely, and by which he was misled to his pre-
judice, the difficulty of performance encountered by the ob-
ligor whereby performance cannot be accomplished without
greater expense, destroying the prospect of profit for him, is
not a sufficient reason to justify an abandonment of his obli-
gation or to stop short of a full and substantial discharge of it.
He is not therefore authorized to substitute his judgment, as
to what ought to be accepted as a fulfillment of the contract,
for what the contract itself calls for. If the contract is entire,
as here, and the obligee must accept such benefits as inure
from the part performance, whether he wills to do so or not,
he cannot be held liable for any part of the consideration.
(Rev. Codes, sec. 4926; *Riddell* v. *Peck-Williamson, H. & V.
Co., supra.*) When, therefore, the default is admitted, the
burden rests upon the obligor to avoid the consequences of it
at the peril of defeat.

The evidence, as summarized above, does not show a sub-
stantial performance; on the contrary, it discloses affirmatively
such deviations from the requirements of the contract as to
justify the conclusion that, upon the discovery by him that it
would be difficult and expensive to do what he had agreed to
do, the plaintiff made up his mind to act upon his own judg-
ment as to what he ought to do under the conditions found to
exist, without reference to the provisions of the contract. The
departures were therefore willful and intentional, and per-
vaded the whole performance in particulars made essential,
not only by the terms of the contract, but by the purpose for
which the work was to be done. Therefore the findings of the
jury cannot be sustained upon the theory that the contract
was substantially performed; nor can they be sustained under
the *quantum meruit* count, either upon the theory that there
was a substantial performance, or on the theory that benefits
accrued to the defendant which it voluntarily accepted and
ought to pay for. It was left in the position of being com-
pelled to accept the result, however unsatisfactory it was, and

without reference to what the result might be. When the work was about half finished, the president of the defendant emphatically expressed to the plaintiff his dissatisfaction with it, and, while he urged him not to abandon it, at the same time he asserted that he would not pay for what had been done; and when the time for seeding came he warned the plaintiff that the seeding of the land in the condition of preparedness it was then, would be at the peril of the latter. To be sure, the defendant could not capriciously refuse to pay on the ground [11] that the result was unsatisfactory. All that it could require under the clause of the contract providing that the work should be done to its satisfaction was that it should be done in such a way as to be satisfactory to a reasonable person acting in good faith. (*McCrimmon* v. *Murray,* 43 Mont. 457, 117 Pac. 73; *Hawkins* v. *Graham,* 149 Mass. 284, 14 Am. St. Rep. 422, 21 N. E. 312.) Even under this rule, however, we do not think the evidence justified the conclusion that the defendant ought to have been satisfied with the result. Nor do we think the evidence sufficient to justify the conclusion that the plaintiff was misled to his prejudice by the statement of Shoemaker as to the condition of the land. Let it be conceded that Shoemaker's statements as detailed by the plaintiff were false, and that for this reason the plaintiff did not make any effort to ascertain what the actual conditions were. According to his own statement, he did ascertain them when he entered upon the land to begin work. When he found out the conditions he was at liberty either to repudiate the contract or to ratify it and proceed to perform it. There is nothing in the evidence tending to show that he could not have repudiated it without loss, and therefore the conclusion must follow, it seems to us, that he chose the latter alternative, which carried with it the assumption of the burden imposed by it. Such prejudice and loss as he suffered by doing the work as he did, after he ascertained the conditions and had been plainly told he would not be paid for it, he voluntarily brought upon himself.

Nor do we think it is shown by a preponderance of the evidence that it was impossible to plow the entire cultivable area to the depth stipulated in the contract, so that plaintiff may justify his default on this ground. On the contrary, the preponderance is against the conclusion that the plowing was impossible. If, upon entering upon the land, plaintiff ascertained that it was not possible to perform the contract as required, he was at liberty to repudiate it and recover for services already rendered (Page on Contracts sec. 1363) ; he was not at liberty, however, to continue the work, and then insist that the defendant should pay for the result in its defective form, as a substantial performance of the contract.

In the consideration of the evidence we have not overlooked **[12]** the fact that the jury visited and examined the land in controversy. The result of their observations, whatever they were, cannot serve to overcome the import of the statements and admissions of plaintiff and his witnesses as to the character of the work done. The judge who determined the motion did so upon the dead record, unaided by a recollection of the incidents of the trial including a view of the witnesses. His office was to **[13]** determine whether, as disclosed by the record, the evidence was sufficient to justify the findings and verdict. (*Gibson* v. *Morris State Bank,* 49 Mont. 60, 140 Pac. 76.) We think he erred in holding that it was, and that defendant is entitled to a new trial.

Errors are assigned on rulings, during the trial, upon questions of evidence, and also upon certain of the instructions to the jury. The objections made to the evidence were upon grounds not tenable, and were properly overruled. The foregoing discussion renders consideration of the instruction unnecessary.

The cause is remanded to the district court, with directions to grant the defendant a new trial.

*Reversed and remanded.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.